[Sac. No. 7232. In Bank. Dec. 2, 1960.]

ROBERT BRUCE McMILLAN, Appellant, v. THE WEST-
ERN PACIFIC RAILROAD COMPANY (a Corpora-
tion), Respondent.

842

McCarthy & Crow, Patrick McCarthy, Richard E. Crow and Robert P. Brorby for Appellant.

Johnson, Davies & Greve and Claire H. Greve for Respondent.

McCOMB, J.—From a judgment in favor of defendant predicated upon the sustaining, without leave to amend, of a demurrer to plaintiff's first amended complaint in an action to recover damages for injuries resulting from the alleged negligence of defendant, plaintiff appeals.

The amended complaint alleged that while plaintiff was employed by defendant as a train dispatcher, defendant "negligently and carelessly required" him "to be subjected . . . to working conditions of unusual responsibility, stress and tension" in that he was "required to operate a system of central traffic control of defendant's railroad which system involved multitudinous and complex mechanical factors and mental decisions, extreme responsibility, constant but shifting attention, and numerous clerical functions which . . . imposed an unusual stress and burden upon plaintiff's physical and nervous systems," which caused plaintiff to suffer "a severe nervous collapse" which rendered him "sick, sore, lame and disabled."

A general demurrer was sustained upon the ground that the amended complaint failed to allege a cause of action.

■■■■ Question: *Did the complaint, as amended, state a cause of action under the Federal Employers' Liability Act, which provides that railroads engaged in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier?*

*Yes.* The Federal Employers' Liability Act reads in part: "Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person *suffering injury* while he is employed by such carrier in such commerce . . . *for such injury or death resulting in whole or in part from the negligence* of any of the officers, agents, or employees of such carrier, *or by reason of any defect or insufficiency, due to its negligence,* in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 U.S.C.A. § 51.) (Italics added.)

It is to be noted that the word "injury" is not qualified by the word "accidental," "bodily," or any other modifying word or words.

In *Urie* v. *Thompson,* 337 U.S. 163 [69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252], the Supreme Court of the United States rejected the contention that the Liability Act is confined to injury inflicted by accident.

The court there interpreted the above-quoted section to include an occupational disease, namely, silicosis. It discussed the principles which govern the interpretation of the word "injury," stating at page 180 et seq.: "The question remains whether silicosis is an 'injury' within the meaning of that term as used in the Federal Employers' Liability Act. It is a novel one for this Court. But we think silicosis is within the statute's coverage when it results from the employer's negligence. Considerations arising from the breadth of the statutory language, the Act's humanitarian purposes, its accepted standard of liberal construction in order to accomplish those objects, the absence of anything in the legislative history indicating a congressional intent to require a restricted interpretation or expressly to exclude such occupational disease, and the trend of existing authorities dealing with the question, combine to support this conclusion.

"We recognize of course that, when the statute was enacted, Congress' attention was focused primarily upon injuries and death resulting from accidents on interstate railroads. Obviously these were the major causes of injury and death result-

ing from railroad operations. But accidental injuries were not the only ones likely to occur. And nothing in either the language or the legislative history discloses expressly any intent to exclude from the Act's coverage any injury resulting 'in whole or in part from the negligence' of the carrier. If such an intent can be found, it must be read into the Act by sheer inference.

■ ''The language is as broad as could be framed: 'any person suffering injury while he is employed'; 'such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier'; 'by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances,' etc. On its face, every injury suffered by any employee while employed by reason of the carrier's negligence was made compensable. *The wording was not restrictive as to* the employees covered; the cause of injury, except that it must constitute negligence attributable to the carrier; or *the particular kind of injury resulting.*

*''To read into this all-inclusive wording a restriction as to* the kinds of employees covered, the degree of negligence required, or *the particular sorts of harms inflicted,* would be contradictory to the wording, the remedial and humanitarian purpose, and the constant and established course of liberal construction of the Act followed by this Court.

''. . . If respondent were right in suggesting that the common law does not recognize occupational disease as a category of compensable injury, he would lend substance to the argument that Congress' use of the word 'injury' was less broad than the word's surface connotation indicates. . . . We do not doubt that at 'common law the incurring of a disease or harm to health is such a personal wrong as to warrant a recovery if the other elements of liability for tort are present.' '' (Italics added.)

■ The court further stated, at page 186 et seq.: ''. . . when the employer's negligence *impairs or destroys an employee's health* by requiring him to work under conditions likely to bring about such harmful consequences, the injury to the employee is just as great when it follows, often inevitably, from a carrier's negligent course pursued over an extended period of time as when it comes with the suddenness of lightning.'' (Italics added.)

(See also *Atchison, Topeka & Santa Fe Railway Co.* v. *Preston,* 257 F.2d 933, 935 [3] ; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Waterhouse* (Tex. Civ. App.), 223 S.W.2d 654, 658 [1] ;

*Nuttall* v. *Reading Company,* 235 F.2d 546, 549 [3]; *Stewart* v. *Baltimore & O. R. Co.,* 137 F.2d 527, 528 [1, 2].)

It was error to sustain the demurrer to the amended complaint without leave to amend. It is settled that negligence may be alleged in general terms, which means that it is sufficient to allege that an act was negligently done without stating the particular omission which rendered it negligent. (*Brooks* v. *E. J. Willig Truck Transp. Co.,* 40 Cal.2d 669, 680 [13] [255 P.2d 802]; *Rannard* v. *Lockheed Aircraft Corp.,* 26 Cal.2d 149, 156 [6] et seq. [157 P.2d 1]; *Guilliams* v. *Hollywood Hospital,* 18 Cal.2d 97, 100 [2] [114 P.2d 1]; *Stephenson* v. *Southern Pac. Co.,* 102 Cal. 143, 147 [34 P. 618, 36 P. 407].)

 The allegations in the amended complaint are clearly sufficient to state a cause of action for injuries resulting from the negligence of defendant, in light of the foregoing decisions.

*Burwell* v. *Railway Express Agency, Inc.,* 26 F.Supp. 26, a decision of the United States District Court for the District of Massachusetts, is contrary in its holding to the decision of the Supreme Court of the United States in *Urie* v. *Thompson, supra,* and therefore should not be followed.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.