John SLAUGHTER, Appellant,

v.

ATLANTIC COAST LINE RAILROAD COMPANY, Appellee.

No. 16276.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 4, 1961.

Decided May 3, 1962.

---

Mr. Martin E. Gerel, Washington, D. C., with whom Mr. Lee C. Ashcraft, Washington, D. C., was on the brief, for appellant.

Mr. Robert R. Faulkner, Washington, D. C., for appellee.

Before Mr. Justice REED, retired,* and DANAHER and BASTIAN, Circuit Judges.

Mr. Justice REED, sitting by designation.

Appellant, a dining car waiter formerly employed by the appellee railroad, finding his common-law cause of action for damages barred by the statute of limitations,[1] brought suit in the District Court under the Federal Employers' Liability Act, 53 Stat. 1404, § 1, 45 U.S.C.A. § 51.[2] Upon appellee's motion the court dismissed the complaint for failure to state a claim upon which relief could be granted; appellant prosecuted this timely appeal.

The sole question before us is whether the complaint did in fact state a cause of action under the F.E.L.A. for "injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees" of the carrier. It alleged that in the late after-

---

* Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.Code.

1. See D.C.Code, § 12–201 (1961).

2. "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

noon of August 7, 1959, the appellant reported to work in the dining car of one of appellee's trains. He served several passengers but was soon relieved of his duties by the railroad's dining-car inspector who instructed him to return to his berth. "Thereafter, the defendant's inspector did cause a wire to be sent ahead to the police of Jessup, Georgia, through which the train was to pass, that plaintiff should be arrested and removed from the train. At Jessup, the train was stopped for the sole purpose of effecting the unlawful arrest and detention of the plaintiff who was turned over to the police by the inspector. Plaintiff was forcibly and without just or probable cause, assaulted and against his will and consent, taken to the police station and unlawfully detained overnight." Appellant maintained "that he was neither intoxicated nor disorderly" and stated that his arrest and detention were "maliciously" requested by the appellee's inspector "acting within the scope of his authority."

▆▆▆ The allegations of this complaint would have been sufficient to state a common-law cause of action for false arrest against the principal (appellee) for the acts of its agent acting within the scope of his authority.[3] The ques-

tion before us then is whether the intentional tort of false arrest constitutes "negligence" within the meaning of the Act. As a matter of first impression one might suppose that "negligence" meant negligence in the common-law sense of that term and that intentional torts were not within the scope of the Act. However, the Supreme Court long ago rejected this strict construction in Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082.[4] Valentin Encarnacion, a longshoreman, engaged in loading a barge lying in the navigable waters of the United States, was struck by his foreman and seriously injured. The foreman, authorized to direct the crew, hit Encarnacion to hurry him about his work. The injured longshoreman brought suit against the employing stevedore under the Jones Act, 41 Stat. 1007, § 33, 46 U.S.C.A. § 688, which adopts the standards of the F.E.L.A. A unanimous Court, holding for Encarnacion, reasoned as follows:

" 'Negligence' is a word of broad significance and may not readily be defined with accuracy. Courts usually refrain from attempts comprehensively to state its meaning. While liability arises when one suffers injury as the result of any

---

3. See Jillson v. Caprio, 86 U.S.App.D.C. 168, 181 F.2d 523 (directing officers to arrest may create liability). The complaint would not state a cause of action for malicious prosecution since it does not allege that the criminal proceedings terminated favorably to the appellant. See, e. g., Miller v. Stinnett, 257 F.2d 910 (C.A. 10) ; cf. La Salle National Bank v. 222 East Chestnut St. Corp., 267 F. 2d 247 (C.A. 7) ; but compare Morfessis v. Baum, 108 U.S.App.D.C. 303, 281 F.2d 938. See also Prosser on Torts § 98 at 649. Of course, just as the content of the term "negligence" is determined by application of a uniform federal rule framed without reference to state law (Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572), so, too, the question of what must be pleaded to establish a cause of action is determined by federal law. Brown v. Western R. Co., 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100.

The pleading, while inartistic in omitting allegation that the railroad was a common carrier, is adequate, we think, to state a claim under the F.E.L.A. because we take judicial notice of that well-known fact. Nor does appellee raise this question. But compare Shade v. Northern Pac. R. Co., 206 F. 353 (D.C.W.D. Wash.).

4. See also Urie v. Thompson, 337 U.S. 163, 181–82, 69 S.Ct. 1018, 93 L.Ed. 1282, allowing recovery for silicosis arising from employment:

"To read into this all-inclusive wording a restriction as to the kinds of employees covered, the degree of negligence required, or the particular sorts of harms inflicted, would be contradictory to the wording, the remedial and humanitarian purpose, and the constant and established course of liberal construction of the Act followed by this Court." Compare Johnson v. Southern Pac. Co., 196 U.S. 1, 17, 25 S.Ct. 158, 49 L.Ed. 363.

breach of duty owed him by another chargeable with knowledge of the probable result of his conduct, actionable negligence is often deemed —and we need not pause to consider whether rightly—to include other elements. Some courts call willful misconduct evincing intention or willingness to cause injury to another gross negligence. * * * And it has been held that the use of excessive force causing injury to an employee by the superintendent of a factory in order to induce her to remain at work was not a trespass as distinguished from a careless or negligent act. * * * While the assault of which plaintiff complains was in excess of the authority conferred by the employer upon the foreman, it was committed in the course of the discharge of his duties and in furtherance of the work of the employer's business. As unquestionably the employer would be liable if plaintiff's injuries had been caused by mere inadvertence or carelessness on the part of the offending foreman, it would be unreasonable and in conflict with the purpose of Congress to hold that the assault, a much graver breach of duty, was not negligence within the meaning of the Act. * * * " [Citations omitted.] Id., 281 U.S. at 641, 50 S.Ct. at 442. Accord, Alpha Steamship Corp. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086.

We have been unable to find any case in which the Supreme Court has decided whether intentional torts other than assault are actionable under the F.E.L.A. Although the Third Circuit Court of Appeals has held that an action for false arrest may not be brought under the Jones Act,[5] we believe that that court reached an erroneous result.

■ No doubt the primary purpose of the F.E.L.A. was to eliminate the defenses of contributory negligence, assumption of risk, contract not to sue, and the fellow-servant rule. See H.R. Rep. No. 1386, 60th Cong., 1st Sess.; S.Rep. No. 460, 60th Cong., 1st Sess.; 42 Cong.Rec. 4427. Arguably the scope of the term "negligence" was to be limited to cover only the class of cases in which one of these defenses might be asserted. Indeed, the result in Jamison itself may be attributable in large part to the Court's concern that the fellow-servant rule might bar a state law action for assault against the employer, unless such a situation was covered by the F.E.L.A. Of course, none of the above four defenses, other than possibly contract not to sue, would be applicable in a common-law action for false arrest effected by police officers. But the legislative history of the F.E.L.A. cannot be said to show that the scope of affirmative right of action conferred by the Act was to be limited to those cases in which one of the four defenses might be available. Nor does the legislative history otherwise conclusively fix the congressional intent for present purposes.

■ We believe that under the Jamison case any intentional tort which inflicts bodily injury upon the employee is "negligence" within the meaning of the Act. False arrest, since it involves an assault, comes within this category. Here, just as in Jamison, it

5. Forgione v. United States, 202 F.2d 249 (C.A. 3, 1953), certiorari denied, 345 U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384. The court there held that false arrest effected by military police at the direction of the employer did not inflict a "personal injury" within the meaning of the Jones Act. While the F.E.L.A. does not make reference to "personal" injury, we do not think that this is a material distinction. The use of the adjective "personal" does not necessarily carry the connotation of injury to the body of the employee. It often indicates an injury affecting one's physical or mental person as contrasted with injury affecting property. Webster's Third New International Dictionary (1961). Furthermore, the legislative history of the F.E.L.A. indicates that it was to be limited to actions for "personal" injury. See e. g., H.R.Rep. No. 1386, 60th Cong., 1st Sess. 1. Thus, Forgione is not distinguishable from the present case.

would be anomalous to disallow recovery for an injury merely because the harm was intentionally inflicted. To bar the action would thwart the central purpose of the F.E.L.A.—to compensate railroad employees who suffer possibly disabling physical injury as a consequence of their employment. See Urie v. Thompson, supra.[6] Of course, no recovery may be had unless the tort was "committed in the course of the discharge of [the inspector's] duties and in the furtherance of the work of the employer's business." Jamison, supra 281 U.S. at 641, 50 S.Ct. at 443. See Nelson v. American-West African Line, Inc., 86 F.2d 730 (C.A.2); Sheaf v. Minneapolis, St. P. & S. S. M. R. Co., 162 F. 2d 110, 113 (C.A.8); Copeland v. St. Louis-San Francisco R. Co., 291 F.2d 119 (C.A.10).[7] That situation was alleged to exist here.

Reversed.

---

6. Although slander and libel would probably not be included, we do not mean to suggest that a disabling emotional injury would not be actionable. See, e. g., McMillan v. Western Pac. R. Co., 54 Cal.2d 841, 9 Cal.Rptr. 361, 357 P.2d 449.

7. On the other hand if the employer was negligent in hiring the particular employee, no such showing need be made. See, e. g., Koehler v. Presque-Isle Transp. Co., 141 F.2d 490 (C.A. 2). But see the Sheaf case, supra.