Roger GASTON,

v.

**FLOWERS TRANSPORTATION.**

Civ. A. No. 87–463.

United States District Court,
E.D. Louisiana.

Dec. 30, 1987.

Leonard A. Radlauer, New Orleans, La., for plaintiff.

W.J. Larzelere, Jr., C. Theodore Alpaugh, W.J. Larzelere, Jr., Larzelere, Ellefson & Pulver, Metairie, La., for defendant.

## ORDER AND REASONS

MENTZ, District Judge.

Before this Court is the motion of defendant, Cro–Marine Division, (Cro–Marine), a division of Chromalloy American Corporation, for summary judgment.

This action was commenced by Mr. Roger Gaston (Gaston) for injuries Gaston allegedly sustained due to an accident that occurred on the M/V MARINER on February 24, 1986. Gaston and his half-brother were seamen working as deckhands aboard the M/V MARINER. Gaston was employed by defendant, Flowers Transportation, which owned and operated the vessel. On February 24, 1987, Gaston's half-brother fell into the water while attempting to secure mooring lines and was crushed to death between two vessels. Initially, Gaston claimed damages for physical injuries incurred as a result of the incident. However, it is apparent by Gaston's answers to interrogatories that his physical injury was so inconsequential[1] that his real demand is only for mental injury allegedly caused by witnessing the death of his half-brother.[2]

---

1. When asked at Gaston's deposition on August 5, 1987 whether he was physically hurt as a result of this incident, Gaston responded: "Just a bruise when I fell on my elbows ... It wasn't anything major. I landed on my elbows." Dep. of Gaston, p. 48. Gaston also stated that he was not having any physical problems with his body at the time his deposition was taken. *Id.* at 49.

2. Cro–Marine's Interrogatory No. 14 asked plaintiff to specify, in complete detail, all injuries for which recovery is sought. Gaston answered: "I have a fear for going back to work on a tow boat. I can't keep my mind on any type of work. I have flashbacks of the accident which I witnessed. I have lost all control of the way my mind wanders. I can't sleep at night. I

Cro–Marine seeks summary judgment on two issues. First, whether Gaston has a cause of action under the Jones Act or General Maritime law for wholly mental injuries sustained from witnessing peril to another. Second, whether the M/V MARINER was unseaworthy.

For the purpose of this motion, the Court adopts plaintiff's allegations of fact. Gaston claims that due to the negligence of the vessel's captain, the barge was struck extremely hard, knocking both Gaston and his half-brother down. Gaston's half-brother was thrown between two barges and Gaston fell onto the deck. Gaston attempted to stand up, slipped in diesel oil on the deck, grabbed the hands of his half-brother, but was unable to save his half-brother from the crush of the barges. Gaston's Jones Act and General Maritime Law claims for damages due to mental injury sustained from observing the death of his half-brother presents a question of first impression for the Court.

## ANALYSIS

### I. The Jones Act Claim

The Court is unable to find authority to recognize a cause of action for wholly emotional injuries under the facts presented in this case. The Circuits have, of yet, only recognized a cause of action for a seaman's mental injury when it arises from the seaman's physical injury. Gaston argues that in *Hagerty v. L & L Marine Services, Inc.,* 788 F.2d 315 (5th Cir.1986), the Fifth Circuit dispensed with the physical impact requirement, thus entitling a seaman to recover solely for mental injury.

In *Hagerty,* a Jones Act seaman sued his employer for damages he sustained from being drenched with the chemical dripolene.[3] Hagerty claimed damages for pain, suffering, and mental anguish, including mental anguish sustained from his fear of developing cancer. Hagerty also sought compensation for medical expenses he incurred from biannual medical examinations which included blood and laboratory work. An issue on appeal was whether Hagerty could recover damages for cancerphobia. The court held that cancerphobia was merely a specific type of mental anguish or emotional distress and that courts have long allowed plaintiffs to recover for physical and emotional harm under the Jones Act. In addressing this damages issue, the court stated that "[w]ith or without physical injury or impact, a plaintiff is entitled to recover damages for serious mental distress arising from fear of developing cancer where his fear is reasonable and causally related to the defendant's negligence." *Id.* at 318.

Though Gaston argues that *Hagerty* is directly on point, the Court is of the opinion that the facts in *Hagerty* are clearly distinguishable from the instant case. The defendant in *Hagerty* was negligent in using a defective barge and/or equipment to load chemicals. Hagerty was directly impacted by the defendant's negligence. His body was drenched with chemicals which exposed him to a risk of developing cancer. His mental anguish arose from his anxiety over the possibility of contracting cancer. Even though Hagerty might never develop cancer, the risk was ever-present. Consequently, his fear was for his *own* well-being and was reasonably and causally related to being soaked with toxic chemicals.

In contrast, Gaston's mental anguish did not arise from fear for his personal welfare, but from the horror of seeing his half-brother crushed to death. There is no evidence that Gaston feared for his own safety, as did Hagerty. The only injury Gaston suffered which could be associated with the defendant's alleged negligence was his bruised elbow. The Court believes that the language in *Hagerty* was not intended to be construed to authorize a seaman's recovery for mental injury sustained

---

can't get over the fact that I have lost one of the most important persons of my life. I have been taking treatments by Dr. G.F. Beissel, psychologist ... I see Dr. Beissel on a monthly basis as of February, 1987. According to Dr. Beissel, I am diagnosed as having Post Traumatic Stress Disorder." Gaston has not attempted to amend his answer to defendant's interrogatory.

**3.** Hagerty suffered dizziness, leg cramps, and a persistent stinging sensation in his feet.

**1038**

from watching peril to another. To date, none of the Circuit Courts have addressed this issue.

Gaston's alternative argument that he was in the zone of danger of the accident and therefore should be entitled to recover is significant only if this Court were to apply Louisiana tort law. The United States Supreme Court has indicated that the Circuit Courts may refer to state law to decide new issues concerning recovery for wholly emotional injuries. *Atchison, Topeka & Santa Fe Railway Company v. Buell*, —— U.S. ——, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). In *Buell*, a railroad employee filed a FELA suit, alleging that the railroad had condoned his harassment by fellow employees, causing him to suffer an emotional breakdown. The court held that the record was insufficient to address plaintiff's ability to recover under the FELA for a purely emotional injury. 107 S.Ct. at 1417. Nevertheless, the court stated that whether a FELA employee may recover solely for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." 107 S.Ct. at 1417. The Court suggested that guidance in resolving this issue might be forthcoming from the developing common law in the various states. 107 S.Ct. at 1417–1418.

Since the Jones Act is based upon the FELA, this Court will follow the Supreme Court's directive in *Buell* and consider the law of Louisiana, the state where both plaintiff and defendant reside, to determine whether to recognize a seaman's cause of action for wholly mental injury suffered from witnessing peril to another.

Since *Black v. Carrollton Railroad*, 10 La.Ann. 33 (1855), Louisiana has refused to allow recovery for mental anguish occasioned by another's injury or suffering. The only exception to this rule are cases of wrongful death and cases where the claimant's mental anguish is occasioned by the defendant's breach of a primary and independent legal or contractual duty which is owed directly to the aggrieved plaintiff. *Turgeau v. Pan American World Air-*

*ways*, 764 F.2d 1084, 1087 (5th Cir.1985). Louisiana law allows an individual to recover for "fright, fear, or mental anguish" sustained while an ordeal is in progress, regardless of whether the individual was physically injured. *Tudela v. Pan American World Airways*, 764 F.2d 1082, 1083 (5th Cir.1985). Under all these theories, the individual must be within the "zone of danger" created by the defendant's negligence. *See LeConte v. Pan American World Airways*, 736 F.2d 1019, 1021 (5th Cir.1984).

Applying this standard, *Turgeau* upheld an award to a plaintiff who was in her home, one hundred feet from the point where a Pan American plane struck the ground. Pan Am conceded that the plaintiff was within the zone of danger because she was present and reasonably believed herself to be in danger at the time of the crash. The court upheld the jury's award of damages for wholly emotional injury based upon the unrebutted testimony of the plaintiff's psychiatrist that plaintiff suffered from post-traumatic stress disorder. 764 F.2d at 1089.

Under Louisiana law, Gaston would not prevail on this issue because he has presented no evidence to show that he reasonably believed he was in danger when the accident occurred. Gaston's deposition and his answers to interrogatories do not indicate that Gaston feared danger to himself at the time his brother fell off the vessel and was crushed between the barges. Additionally, there is no evidence in the record, in the form of a physician's report or otherwise, to establish the viability of Gaston's assertion that he suffers from post-traumatic stress disorder.

The Court will not address whether Louisiana law should be adopted to allow a seaman to recover for wholly emotional injuries incurred by witnessing peril to another. Even if this Court were to follow Louisiana law, Gaston has not presented facts sufficient to survive a motion for a directed verdict under Federal Rule of Civil Procedure 50(a) were this case to proceed to trial. *See Professional Managers, Inc.,*

et al. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir.1986).

## II. The General Maritime Law Claims

 The Court need not address whether the M/V MARINER was unseaworthy because Gaston appears to be seeking recovery solely for emotional injury. See supra pg. 1037. The only injuries compensable to a seaman who is injured as a result of an unseaworthy vessel are physical injuries and pain and suffering. *Sosa v. M/V Lago Izabal*, 736 F.2d 1028, 1034 (5th Cir.1984), quoting *Bartholomew v. Universe Tankships, Inc.*, 279 F.2d 911, 916 (2nd Cir.1960). Consequently, Gaston's claim for mental injury caused by defendant's negligence in operating an unseaworthy vessel must be denied. That Gaston sustained physical injury when he fell on the deck is irrelevant. Gaston's bruised elbow is an injury which is separate and distinct from his claim for emotional injury caused by watching his half-brother killed. The Court is unaware of any maritime jurisprudence recognizing a cause of action for witnessing peril to another and denies Gaston's claim for emotional injury based on *Sosa* and the same reasons articulated in the Court's analysis on the Jones Act claim.

The Court finds that there are no questions of material fact and that defendant's motion is well supported by the law.

Accordingly,

IT IS ORDERED that the motion of defendant, Cro–Marine, for summary judgment is GRANTED.