Richard W. TEAGUE, Carol Teague, Kathleen Teague, Colleen Teague, Meghan Teague and Michael Teague, Plaintiffs,

v.

## NATIONAL RAILROAD PASSENGER CORP. d/b/a Amtrak, Defendant.

Civ. A. Nos. 88–1543–Y, 88–0661–Y.

United States District Court, D. Massachusetts.

Feb. 21, 1989.

Raymond J. Kenney, Jr., John P. Mulvey, Martin, Magnuson, McCarthy & Kenney, Boston, Mass., for plaintiffs.

Michael Fitzhugh, Fitzhugh & Assoc., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The defendant National Railroad Passenger Corp. (hereinafter "AMTRAK") moves today to dismiss two complaints brought by the plaintiffs Richard Teague (hereinafter "Teague"), Carol Teague, and their chil-

dren, Kathleen, Colleen, Meghan, and Michael Teague.

The gravamen of Teague's claims are the intentional and negligent infliction of emotional distress by the defendant AMTRAK.[1] In August, 1988, Teague filed an action in federal court (C.A. No. 88–0661–Y), which characterized the wrong done to him as a Federal Employers' Liability Act ("FELA") claim, together with a state court action straightforwardly charging the two torts. AMTRAK removed the state court action to federal court and the new case (C.A. No. 88–1543–Y) was assigned to this Court because it was related to 88–0661–Y. AMTRAK's motions to dismiss both actions, for failure to state a claim, are presently before the Court. Ruling from the bench at the time of the hearing, the Court had earlier dismissed the state claims as preempted by the FELA, and dismissed the FELA claim to the extent that it was grounded on the negligent infliction of emotional distress. Thus, only the intentional infliction FELA claim survived. Further reflection on the FELA claims' viability led the Court *sua sponte* to vacate its earlier ruling and address the entire matter in this written opinion.

### I. *The Facts as Alleged by the Plaintiff.*

Teague, a management employee of AMTRAK, asserts that his superiors subjected him to "embarrassment, humiliation, harassment, degradation, and other severe emotional distress" through their treatment of him. Specifically, Teague alleges that his supervisors threatened him with the loss of his job if he did not rule against union members at a disciplinary hearing; ignored his reports of safety violations and chastised him for making them; made disparaging and humiliating remarks about an unspecified medical condition from which Teague suffers; unfairly gave him a low job evaluation; humiliated him by telling an individual outside the company that he was not impartial in employee matters; required confirmation of surgery performed on Teague's daughter, an event which

---

1. Carol Teague and the Teague children bring claims for loss of consortium.

Teague had used to justify his absence from a training class; unfairly put him on probation; and forced him to perform apparently undesirable duty riding the train between New York and Boston in order to detect employee theft. *See* Complaint (88–0661–Y) at paras. 10–55. Teague alleges that this pattern of harassment resulted in psychological and physical harm (e.g., ulcers, duodenitis, chest pain) to him.

## II. *The Negligent Infliction of Emotional Distress Under the FELA.*

The law is becoming settled that a claim for the negligent infliction of emotional distress is cognizable under the FELA. *See Amendola v. Kansas City Southern Ry.,* 699 F.Supp. 1401, 1408–10 (W.D. Mo. 1988); *Althoff v. Consolidated Rail Corp.,* C.A. No. 87–4384, 1988 WL 61734 (E.D.Pa. 1988); *Halko v. New Jersey Transit Rail Operations, Inc.,* 677 F.Supp. 135, 139–40 (S.D.N.Y.1987); *Gillman v. Burlington Northern R.R.,* 673 F.Supp. 913, 916–17 (N.D. Ill.1987); *see also Hagerty v. L & L Marine Services Inc.,* 788 F.2d 315 (5th Cir.), *modified,* 797 F.2d 256 (5th Cir.1986) (permitting a seaman to sue under the Jones Act, *see infra* note 10, for serious mental distress in a decision preceding that of the Supreme Court in *Atchison, Topeka and Santa Fe Ry. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 [1987] [discussed below]); *Taylor v. Burlington Northern R.R.,* 787 F.2d 1309 (9th Cir. 1986) (holding that such a claim is cognizable in a decision preceding *Buell* ); *cf. Gaston v. Flowers Trans.,* 675 F.Supp. 1036, 1037–39 (E.D. La.1987) (suggesting but not ruling that such a claim is cognizable). The Supreme Court recently addressed the issue, focusing on whether the FELA per-mits such a claim where only emotional injury is alleged. *Atchison, Topeka and Santa Fe Ry. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). Its words are instructive:

> The question whether "emotional injury" is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case. Assuming, as we have, that FELA jurisprudence gleans guidance from common law developments, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity.

*Id.* at 568, 107 S.Ct. at 1417. Indeed, the Supreme Court observed that, although most states now recognize a tort of intentional infliction of emotional distress, and many recognize a tort of negligent infliction of emotional distress, there are numerous doctrinal divergences between the states with respect to the contours of these actions.

> In short, the question whether one can recover for emotional injury may not be susceptible to an all inclusive "yes" or "no" answer. As in other areas of the law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand.

*Id.* at 570, 107 S.Ct. at 1418 (footnotes and citation deleted). The Court went on to hold that, based on the insufficient record before it, it was unable to determine whether the respondent-employee's claim was cognizable, and therefore remanded the matter on this issue.[2]

---

**2.** Although the Supreme Court has thus not decided whether and to what extent negligent infliction of emotional distress claims are cognizable, its clear message to courts to proceed cautiously in this field with respect to dismissal motions severely undermines several previously decided cases that had rejected emotional distress claims on the ground that one must show physical injury to recover under the FELA. *E.g., Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 813 (7th Cir.1985) (holding, in a decision involving a claim of intentional infliction of emotional distress, that the "FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact...."), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); *Bullard v. Central Vermont Ry.,* 565 F.2d 193, 197 (1st Cir.1977) (holding, in a case involving negligence, that recovery for emotional injury under the FELA is permitted only where it accompanies physical injury); *Finn v. Consolidated Rail Corp.,* 622 F.Supp. 41, 43 (D.Mass.1985) (following *Bullard* ), *aff'd* 782 F.2d 13 (1st Cir.1986); *Naidoo v. Union Pacific*

The courts that have considered this issue since *Buell* have uniformly held negligent infliction cognizable under the FELA,[3] and differ only on the elements necessary to make out such a claim. Some courts have held that such a claim requires an objective physical manifestation of the emotional distress, but no physical impact. *See Amendola*, 699 F.Supp. at 1410; *Halko*, 677 F.Supp. at 139. Other courts have employed the older "zone of danger" test requiring that although a claimant need not exhibit physical injury, she must have been placed in immediate physical danger by the negligence of the employer. *See Gillman*, 673 F.Supp. at 916–17; *cf. Gaston*, 675 F.Supp. at 1037–39 (suggesting, but not deciding, that such is the test for a FELA negligent infliction claim). Still another court has held that it is enough to avoid summary judgment where one does not exhibit any physical manifestation, was not in the zone of danger, did not witness another's injury, but did operate the instrumentality of another worker's death. *Althoff v. Consolidated Rail Corp.*, C.A. No. 87–4384, 1988 WL 61734 (E.D.Pa.1988).

▮ This Court begins its analysis by agreeing that a negligent infliction claim is indeed cognizable under the FELA. Indeed, given the state of the common law, one could glean no other guidance from it. *See Buell*, 480 U.S. at 568, 107 S.Ct. at 1417; *Gillman*, 673 F.Supp. at 916 (quoting *Buell*). Although intentional and negligent infliction were not recognized as torts in 1906 when the FELA was enacted, most jurisdictions now recognize both torts. *Buell*, 480 U.S. at 568–70, 107 S.Ct. at 1417–18; *Gillman*, 673 F.Supp. at 916.

The more difficult question for this Court is whether Teague's claim, which asserts no zone of danger element, is cognizable. The Court holds that a review of developments in state common law, *see* S. Plotkin, The Evolution of Tort Liability for Psychic Injuries: A Proposal to Protect Relational Interests (1986) (unpublished thesis on file at the University of Virginia School of Law), as well as developments in Supreme Court FELA jurisprudence, reveal a sufficient claim has been made out. Teague claims that the insults and harassment of his superiors at AMTRAK caused him mental anguish as well as physical ailments. As the Supreme Court has observed, "While the traditional rule was that a plaintiff could not recover for mental injuries unconnected with actual or threatened impact, the majority of jurisdictions now appear to have abandoned that rule." *Buell*, 480 U.S. at 569 n. 20, 107 S.Ct. at 1418 n. 20. Indeed, the present majority rule allows recovery for "mental distress [when] certified by some physical injury, illness, or other objective physical manifestation." *Prosser and Keeton on the Law of Torts*, sec. 54 at 364 (5th ed. 1984) (hereinafter, *"Prosser and Keeton "*);[4] *see, e.g., Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171 (1982); *Restatement (Second) of Torts*, secs. 436, 436A and Comments. The fact that some "objective physical manifestation" of the emotional distress is present here—the ulcers and duodenitis—brings this case easily within the boundaries of the tort as defined by the majority common law rule.

As noted, the *Gillman* court chose severely to limit recovery under the FELA for the negligent infliction of emotional distress to plaintiffs within the zone of

*R.R.*, 224 Neb. 853, 402 N.W.2d 653, 658 (1987) (holding that one must assert some physical injury to make out a FELA claim); *see also Adkins v. Seaboard System R.R.*, 821 F.2d 340, 341–42 (6th Cir.) (holding, in a post-*Buell* decision, that an intentional infliction claim is not cognizable under the FELA, although suggesting that a negligent infliction claim might be maintainable), *cert. denied,* — U.S. —, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987); *Pikop v. Burlington Northern R.R.*, 390 N.W.2d 743 (Minn.1986) (noting, in holding that the FELA did not therefore preempt a similar state law claim, that the United States District Court for the District of

Minnesota had held that the FELA does not recognize an independent cause of action for the intentional infliction of emotional distress), *cert. denied sub nom. Burlington Northern R.R. v. Gulati*, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed. 2d 800 (1987).

3. *See supra* at 1346.

4. A minority of states now allow recovery in the absence of any physical injury or illness. *Prosser and Keeton*, sec. 54 at 364–65.

danger. In so doing, the court sought to follow what it perceived to be "the purpose of the FELA—to protect the security of the worker from 'physical invasions or menaces.'" *Gillman*, 673 F.Supp. at 917 (quoting *Lancaster*, 773 F.2d at 813); *see also Gaston*, 675 F.Supp. at 1037–39 (suggesting, but not ruling, that the zone of danger test is appropriate for a FELA negligent infliction claim).[5]

This Court respectfully rejects such a narrow reading of a statute meant to be broadly interpreted. *See Halko*, 677 F.Supp. at 139–40 (also employing the broader majority-rule version of the tort). The first problem with the *Gillman* court's analysis is that it attempts to divine the "original intent" of the FELA's framers about a tort which, the court admits, did not exist at the time the FELA was passed in 1906. 673 F.Supp. at 916.

This reasoning, articulated more or less explicitly, seems to infect as it informs many of the decided cases. *See, e.g., Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 813 (7th Cir.1985) (holding that "the FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact"); *McSorley v. Consolidated Rail Corp.*, 581 F.Supp. 642, 645 (S.D.N.Y. 1984) (holding that the Act is intended to facilitate "the compensation of employees who are physically injured or killed at work"). The drafters of the FELA, so the argument runs, were concerned only with providing relief to those workers who suffered the classic physical injuries—the broken bones and mangled limbs—that accidently, but inevitably, befall the workers of an industrial nation. Such rarefied afflictions as emotional distress were not at all what the drafters contemplated. Thus, to be true to Congress' intent, courts must limit recovery under the FELA to those anticipated injuries and to emotional distress only when it is caused by physical injury or the immediate danger thereof.

The problems with this argument are twofold. First, it proves too much. The same reasoning argues against the recovery in *Jamison v. Encarnacion*, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930), for an intentional assault by a foreman, or in *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), for silicosis caused by years of inhalation of silica dust. Indeed, *Buell*, which seems clearly to contemplate recovery for at least some negligent inflictions of emotional distress, is irreconcilable with this view. *See Buell*, 480 U.S. at 568–70, 107 S.Ct. at 1417–18; *see also Halko*, 677 F.Supp. at 139–40.

This attack also fails for the reason that such particularized original intent arguments usually fail. The vision of the drafters of law is necessarily historically limited. The members of Congress who drafted the FELA simply could not have had an opinion about a tort that the common law itself had not yet recognized. *Prosser and Keeton*, sec. 12 at 54–55. A similar problem arises when, for example, one struggles to discern the original intent of our Constitution's framers with respect to as sophisticated a civil rights issue as the permissibility of the modification of a fire department's seniority rules to preserve the gains of affirmative action in the face of municipal layoffs. *See Firefighters v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984).[6]

Like the Constitution, it is far more fruitful to view the FELA as a living, growing document than as a fossilized one. The Supreme Court has recognized this princi-

---

5. This Court notes that FELA jurisprudence is a form of the ever rare federal common law. Thus, the *Gillman* and *Gaston* cases distress in that each follows the common law of the state in which they sit. That way lies chaos: the federal courts in the fifty states might produce as many as fifty versions of what should be unified federal law. Thus, while this Court cites Massachusetts law, it does so only because it is exemplary of the rule the Court follows and by no means to imply that each federal court should look to the law of its forum state.

6. Professor Derrick Bell, in another context, has suggested the dilemma facing anyone who attempts this endeavor: "First, you would have to explain to the framers how [the black litigants] had gotten free of their chains" and secured such jobs. D. Bell, *The Supreme Court 1984 Term: Forward*, 99 Harv.L.Rev. 4, 4 (1985). Professor Bell's point is well taken.

ple in its teaching that "FELA jurisprudence gleans guidance from common law development." *Buell,* 480 U.S. at 568, 107 S.Ct. at 1417 (citing *Urie,* 337 U.S. at 174, 69 S.Ct. at 1026); *see also Halko,* 677 F.Supp. at 139–41 (applying recently developed common law in holding that the FELA recognizes claims for purely emotional injuries). Indeed, to the extent the Supreme Court has divined any principle of original intent with respect to the FELA, it is the general one that the FELA is a broad statute meant to be even more broadly interpreted. *Buell,* 480 U.S. at 561–62, 107 S.Ct. at 1413–14. It is this principle to which the Court adheres here.

Moreover, *Gillman*'s analysis strays from the import of *Buell.* In *Buell,* the plaintiff had not alleged any "physical invasion or menace" in substance different from that alleged by Teague. Indeed, the plaintiff's complaint alleged that his emotional injury stemmed from the defendant railroad's failure

> "to provide [him] with a safe place to work, including, but not limited to, having fellow employees harass, threaten, intimidate [him] [sic], and in particular, foreman Ed Wright threatened, harassed, and intimidated [him] maliciously and oppressively, negligently, and intentionally, in order to cause personal injury to [him] and to cause mental and emotional suffering. All said acts were condoned and approved by [the Railroad] and as a direct and proximate result of said negligence and intentional acts, [he] was caused to suffer an emotional breakdown, thus inflicting on him injuries and damages as hereinafter alleged." App. 7.

*Buell,* 480 U.S. at 559, 107 S.Ct. at 1412 (quoting the complaint; bracketed material, save for "sic," added by the Supreme Court). *Most of the incidents of which the*

plaintiff complained involved his foreman, who:

> "allegedly insisted that [the plaintiff] and other carmen complete certain car inspection reports in an improper manner, directed respondent to help him remove company property from the yard, repeatedly threatened to discharge respondent, and condoned conduct by other employees that was obviously intended to humiliate respondent."

*Id.* at 559–60 n. 1, 107 S.Ct. at 1413 n. 1 (quoting the complaint). With respect to the absence of immediate physical injury or its threat, the *Buell* complaint is strikingly similar to that of Teague.

As previously observed, the Supreme Court in *Buell* expressly left open the question whether one can recover for purely emotional harm pursuant to a negligent infliction claim brought under the FELA. This Court's decision today is informed and directed by the structure of Supreme Court ruminations on that issue. In considering whether one could recover for purely emotional injury, *Buell* noted that the question turned "on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Id.* at 568, 107 S.Ct. at 1417. With respect to these variables, the Supreme Court focused on the degree of intent required to make out an intentional infliction claim, the level of physical manifestation necessary to support recovery, and the relationship of the parties. What the Supreme Court did not address is particularly significant. The Supreme Court did not rule—though the factual record before it was sufficiently developed had it wished to address the point—that the plaintiff was barred from recovery for negligent infliction of emotional distress for mere harassment because his injury was not caused by "physical invasions or menaces." [7] Moreover, the Supreme Court did

---

7. Granted, the Supreme Court did note that, upon development of the facts in *Buell,* the issue of pure emotional injury might not be squarely presented because the plaintiff had testified in a deposition about at least one episode of actual assault by a co-worker. 480 U.S. at 570 n. 22, 107 S.Ct. at 1418 n. 22. Of course, such a physical assault presumably would bring the case within the reach of *Jamison,* and thus easily resolve it. Without any physical injury or "zone of danger" near-injury alleged, the Supreme Court chose not to rule but to return the matter for further factual development.

not even direct the district court to consider whether the FELA reached emotional distress not caused by "physical invasion or menaces." Rather, as outlined above, the Supreme Court's treatment of the issue merely recited the various common debates in the run-of-the-mill state common law case, devoid of all concerns particularized to the FELA.

■ With these significant silences of the Supreme Court in mind, this Court therefore rejects the *Gillman* approach to the extent that it permits recovery *only* if the "zone of danger" test is satisfied. In addition to permitting recovery under such circumstances, the Court also adopts the common law majority rule that actual or threatened impact is unnecessary to a negligent infliction claim under the FELA and that objective symptomatology of the mental distress will suffice. That is to say, this Court adopts the elements of the tort as stated by the Massachusetts Supreme Judicial Court:

(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.[8]

*Payton v. Abbott Labs,* 386 Mass. 540, 557, 437 N.E.2d 171 (1982).[9] Under this standard, Teague's complaint survives AMTRAK's motion to dismiss as all five elements have been properly pleaded.

III. *The Intentional Infliction of Emotional Distress Under the FELA.*

■ The second issue before this Court is whether the FELA encompasses a claim for intentional infliction of emotional distress of the type alleged here, *viz.,* one that claims physical as well as emotional injury.

The FELA statute on its face appears to reach negligent, but not intentional, acts:

Every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier....

45 U.S.C.A. sec. 51 (West 1986). However, it is now clear beyond peradventure that the FELA covers at least some intentional torts. *See, e.g., Buell,* 480 U.S. at 562 n. 8, 107 S.Ct. at 1414 n. 8; *see also Jamison v. Encarnacion,* 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930) (assault); *Alpha S.S. Corp. v. Cain,* 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086 (1930) (assault); *Brooks v. Washington Terminal Co.,* 593 F.2d 1285, 1288 (D.C.Cir.) (assault), *cert. denied,* 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979); *Slaughter v. Atlantic Coast Line R.R.,* 302 F.2d 912 (D.C.Cir.) (false arrest), *cert. denied,* 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65 (1962).

In determining more exactly the type of intentional conduct covered by the term "negligence" in the FELA statute, one must return to *Jamison,* 281 U.S. 635, 50 S.Ct. 440, the Supreme Court's seminal decision in this field. In *Jamison,* the plaintiff, a longshoreman,[10] sued his employing stevedore for injuries received when the defendant's foreman struck the plaintiff to hurry him about his work. In determining whether "negligence" included the assault in question, the Supreme Court held first that the FELA

is not to be narrowed by refined reasoning or for the sake of giving 'negligence' a technically restricted meaning. It is to

---

**8.** The Court does not foreclose the possibility that other fact patterns might form the basis of a cognizable FELA claim. *See, e.g., Althoff v. Consolidated Rail Corp.,* C.A. No. 87–4384, 1988 WL 61734 (E.D.Pa.1988) (denying the defendant railroad's motion for summary judgment where the plaintiff was not injured, was not within the zone of danger, and did not witness an accident that killed a co-worker, but did operate the instrumentality of the co-worker's death).

**9.** This Court does not adopt the Massachusetts test chauvinistically, *see supra* note 5, but because it is an excellent restatement of the majority common law rule. *See Amendola,* 699 F.Supp. at 1408–10 (also following *Payton* ).

**10.** The Merchant Marine Act expressly extended FELA protections to seamen, including longshoremen. *See* 46 U.S.C.A. sec. 688; *Jamison,* 281 U.S. at 638–39, 50 S.Ct. at 441–42.

be construed liberally to fulfill the purposes for which it was enacted, and to that end the word may be read to include all the meanings given to it by the courts, and within the word as ordinarily used.

281 U.S. at 640, 50 S.Ct. at 442 (citations omitted). The Supreme Court noted that negligence was "a word of broad significance" including even "willful misconduct evincing intention or willingness to cause injury to another...." *Id.* The foreman's action surely constituted FELA negligence because "unquestionably the employer would be liable if plaintiff's injuries had been caused by mere inadvertence or carelessness on the part of the offending foreman[.] [I]t would be unreasonable and in conflict with the purpose of Congress to hold that the assault, a much graver breach of duty, was not negligence within the meaning of the act," at least when the act was committed "in furtherance of the work of the employer's business." 281 U.S. at 641, 50 S.Ct. at 443 (citation omitted).

For a variety of reasons, this Court is convinced that the FELA covers the claim of intentional infliction of emotional distress alleged here. First, the intentional infliction, as alleged, appears to have had, at least in part, been designed to further AMTRAK's business in that one may infer from the pleadings that at least some of the harassment was due to a perceived pro-labor bent as well as a perceived over-zealous concern for safety on Teague's part. Moreover, as discussed above, the FELA covers the same injuries where they have been caused by negligence. Thus, as the *Jamison* court concluded, it would be unreasonable and against Congress' intent to hold that the analogous intentional tort is not covered. *See also McSorley v. Con-*

*solidated Rail Corp.,* 581 F.Supp. 642, 644 (S.D.N.Y.1984).

Indeed, as the Supreme Court stated in *Jamison,* and as its otherwise sweeping language makes clear, the FELA requires a liberal reading to fulfill Congress' intent. 281 U.S. at 640, 50 S.Ct. at 442. The Supreme Court has frequently reiterated this view. *See, e.g., Buell,* 480 U.S. at 561–62, 107 S.Ct. at 1413–14 (observing that "[t]he coverage of the statute is defined in broad language, which has been construed even more broadly") (footnote omitted); *Urie v. Thompson,* 337 U.S. 163, 181–82, 69 S.Ct. 1018, 1030–31, 93 L.Ed. 1282 (1949) (citing *Jamison* ); *see also Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987).

The Supreme Court has followed a steady course of expanding the reach of the FELA. *Jamison* of course broke new ground by extending "negligence" to cover intentional torts, thus making FELA negligence a term of art within a term of art. *Urie* expanded FELA coverage again, beyond the physical injuries of unfortunate workers literally mangled in the gears of industrial America, to more attenuated injuries presumably never contemplated by the draftees such as the occupational disease of silicosis.[11] 337 U.S. at 181–82, 69 S.Ct. at 1030–31. As the *Urie* court stated, "restriction[s] as to ... *the particular sorts of harms inflicted*[ ] would be contradictory to the wording and the [Supreme Court's] constant ... liberal construction" of the Act. *Id.* at 181–82, 69 S.Ct. at 1030. Other courts have extended the FELA's coverage as well. *See Yawn v. Southern Ry.,* 591 F.2d 312, 314, 315–17 (5th Cir.) (holding cognizable clerical employees' FELA claim in which the employees' injuries—gastrointestinal disturbances, physical pain, and mental distress—were caused

---

**11.** Indeed, it is unclear whether, at the time the Act was passed in 1906, silicosis was even recognized as a disease afflicting railroad workers. First, although the medical profession had recognized some link between industrially produced dust and lung disease for centuries, only in 1915 was free silica—such as was produced by trains in the first half of this century—found to cause silicosis. *E.g.,* P. Holt, *Pneumoconiosis* 1–13 (1957); E. Collis, *Milroy Lectures: Industri-*

*al Pneumoconioses,* 28 Pub.Health 252 (1915). Second, it would appear that such lung disease was associated with industries other than railroading. The associated industries, such as mining, cutlery, stonecutting, and gunflint manufacturing, were generally those that involved grinding with, cutting, or crushing rock. The most notable exception to this rule was the textile industry. P. Holt, *supra,* at 1–1.

**1352**

by understaffing), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979); *McMillan v. Western Pacific R.R.,* 54 Cal. 2d 841, 843–45, 9 Cal.Rptr. 361, 357 P.2d 449 (1960) (holding cognizable a train dispatcher's FELA claim based on mental distress caused by being required to operate the railroad's central traffic control system).

In so doing the Supreme Court was being true to its own admonition that the development of "FELA jurisprudence gleans guidance from [state] common law developments." *Buell,* 480 U.S. at 568, 107 S.Ct. at 1417 (citing *Urie,* 337 U.S. at 174, 69 S.Ct. at 1027); *see also Gillman,* 673 F.Supp. at 916. Just as the common law has recognized relatively recently that the infliction of an occupational disease is a tort,[12] so too has it only recently recognized that intentional infliction is a tort. Indeed, the tort of intentional infliction of emotional distress appears not to have existed at common law in 1906 when the FELA was enacted.[13] *Prosser and Keeton,* sec. 12, at 54–55. Today, however, the tort is the majority rule, recognized by 37 jurisdictions. *Leithead v. American Colloid Co.,* 721 P.2d 1059, 1066 (Wyo.1986); *see also Buell,* 480 U.S. at 568 & n. 16, 107 S.Ct. at 1417 & n. 16. This factor alone, while perhaps not enough in itself to persuade the Court to hold intentional infliction cognizable under the FELA, at least would seem to place an informal burden on AMTRAK to articulate why this Court should dismiss such a claim.

Three attacks might be mounted. First, although courts recognize that the FELA extends at least to some intentional torts, some courts have limited which intentional torts qualify. At least three limiting principles have been posited. The Third Circuit in *Forgione v. United States,* 202 F.2d 249 (3d Cir.1953) (per curiam), *cert. denied,* 345

U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384, refused to extend the *Jamison* holding to the tort of false arrest. Unlike the assault in *Jamison,* the court held that false arrest was "utterly unrelated to negligence," 202 F.2d at 252, "because whereas the same physical injury could be inflicted unintentionally or accidentally, a false arrest is never merely negligent," *id.; McSorley,* 581 F.Supp. at 645; *cf. Beanland v. Chicago, Rock Island and Pacific R.R. Co.,* 480 F.2d 109, 113 (8th Cir.1973) (holding that wrongful discharge is not cognizable on the basis that the FELA covers only negligent, not intentional, acts). Teague, of course, passes this test because the negligent analog of intentional infliction is the well recognized tort of negligent infliction.

The District of Columbia Circuit put forth a second test in *Slaughter v. Atlantic Coast Line R.R.,* 302 F.2d 912 (D.C.Cir. 1962), *cert. denied,* 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65 (1962). There, the court held that the FELA did cover the tort of false arrest. In so doing, the court pronounced the appropriate test to be whether the intentional tort inflicts bodily harm and held that false arrest, because it necessarily involves an assault, satisfies the test. 302 F.2d at 915. Because Teague has asserted bodily harm in the form of ulcers, duodenitis and other complaints, he would seem to satisfy this test as well.[14]

A third test—or perhaps more accurately, a different result reached under a standard similar to that of *Slaughter*—may be extrapolated from *McSorley,* 581 F.Supp. 642. The court there construed the FELA's central purpose to be the "remov[al] [of] legal obstacles to the compensation of employees who are physically injured or killed at work." *Id.* at 645. The court then held that false arrest was not cognizable because the tort involved an assault only in a formal sense. *Id.* Teague,

---

**12.** Indeed, the Supreme Court was required to resolve conflicting case law on the issue as late as 1949 when it decided *Urie,* 337 U.S. at 182, 69 S.Ct. at 1030–31.

**13.** Nor did the tort of negligent infliction of emotional distress exist at that time. *Gillman,* 673 F.Supp. at 916.

**14.** The *Slaughter* result, if not the test, has been widely criticized. *See, e.g., McSorley,* 581 F.Supp. at 645; *Brady v. Penn Central Trans. Co.,* 406 F.Supp. 1239 (S.D.N.Y.1975); *cf. Beanland,* 480 F.2d at 113 (holding that the FELA deals exclusively with negligence, not intentional acts).

of course, asserts a different claim in that he asserts physical injuries.[15]

A second line of attack is the original intent argument. Such an attack fails for reasons discussed above. *See supra* at 1848–49.

A third potential attack on expansion of the scope of the FELA is treated in *Buell*, *viz.*, the fear that the extension of the FELA to this type of suit will open the floodgates to a deluge of litigation under which the federal court system as we know it will disappear. In *Buell*, the petitioner railroad argued that should emotional injuries be cognizable under the FELA, virtually no employees would pursue grievances through the Railway Labor Act. *Id.* at 566 n. 13, 107 S.Ct. at 1416 n. 13. As Justice Stevens, writing for the Court, put it,

> This parade of horribles mistakenly assumes that a significant percentage of employees bringing grievances suffer the type of severe emotional injury that has generally been required to establish liability for purely emotional injury ... and that a significant percentage of employees are subject to the type of unconscionable abuse which is a prerequisite to recovery.

*Id.* Justice Stevens went on to note the severe restrictions the common law has placed on who may prevail in such an ac-tion. *Id.* at 569 & nn. 17, 18, 107 S.Ct. at 1418 & nn. 17, 18; *see also Moody,* 823 F.2d at 694; *cf. Althoff,* 1988 WL 61734 at 3–4 (discounting the deluge argument in a negligent infliction FELA case); *Amendola,* 699 F.Supp. at 1410–11 (same). Similarly, here, although this Court expresses no opinion on the eventual outcome of this case, all plaintiffs in Teague's shoes face such an arduous journey that a significant increase in caseload appears most unlikely.

In any event, as addressed to this Court, the deluge argument misperceives both the doctrines of *stare decisis* and separation of powers. It is the duty of this Court to interpret the FELA in light of the governing decisions of the Supreme Court. To this Court, the result here reached is the natural outgrowth of the guidance provided by the decisions of the Supreme Court in *Jamison* and *Buell*. If this Court errs, the corrective is an appeal. If the judiciary is, in turn, faithful to the perceived broadly remedial Congressional policy behind the FELA, *i.e.*, rejecting the argument that Congress would not have enacted a right that would swamp the courts, the corrective is either to support the judiciary with the resources necessary to process the caseload promptly and justly or to narrow the social policy behind the FELA to exclude this class of torts.[16] Whatever the

---

**15.** The Court acknowledges that in a recent FELA decision the First Circuit, in a dictum, has characterized physical injuries caused by stress as mere emotional distress. *See Robert v. Consolidated Rail Corp.,* 832 F.2d at 7 (dictum) (equating a stress-induced heart attack with pure emotional injury). The Supreme Court seems to think otherwise. In *Buell*, the Supreme Court observed that the plaintiff's claim might not actually raise the issue whether purely emotional injury was compensable under the FELA because "he claimed to have suffered physical symptoms in addition to his severe psychological illness." 480 U.S. at 570 n. 22, 107 S.Ct. at 1418 n. 22; *see also* Restatement (Second) of Torts, sec. 436[2] (1965). Certainly under this analysis a heart attack, as alleged in *Robert,* or ulcers and duodenitis, as alleged here, constitute physical, not purely psychological, harm. *See also Moody v. Maine Central R.R. Co.,* 823 F.2d 693, 693, 694, 696 (1st Cir. 1987) (dictum) (equivocating as to whether or not stress and fatigue-induced angina is a purely emotional injury); *Amendola,* 699 F.Supp. at 1410 (holding that an FELA claim is made out

by stating that the claimant suffered physical harm caused by emotional distress).

In any event, for the purposes of the *Slaughter* and *McSorley* tests, this Court discerns no meaningful distinction between physical injury caused by an immediately preceding physical act, *e.g.*, a collision between trains; an occupational disease caused by long-term exposure to harmful dust in the work place, *see Urie;* or emotional distress, as here. To the extent a meaningful distinction exists, the Court holds that these tests are in conflict with Supreme Court pronouncements on the matter, *see supra* at 1350–52 and not to be followed.

**16.** An analogous Massachusetts experience is perhaps illuminating. In 1984, considering the guidance of two decisions of the Massachusetts Supreme Judicial Court, the Massachusetts Appeals Court held that an emotional injury standing alone was compensable under the Massachusetts Workers' Compensation Act where it was "directly related to two specific and stressful work-related incidents coming three days apart and not to general tension or stress of the

outcome, the deluge argument cannot influence the decision here in view of the reasoning in *Jamison* and *Buell.*

At least one circuit has declined to recognize the tort of intentional infliction of emotional distress under the FELA where no physical injury was alleged. *Adkins v. Seaboard System R.R.,* 821 F.2d 340 (6th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 452, 98 L.Ed.2d 392; *Antalek v. Norfolk and Western Co.,* No. 84–3057 (6th Cir. Aug. 30, 1984) (742 F.2d 1454 [table]) (discussed in *Adkins,* 821 F.2d at 341–42). In *Adkins,* a former railroad employee sued his former employer for intentional infliction stemming from a threatened discharge lacking any physical dimension such as assault. 821 F.2d at 341; *see also Antalek,* slip op. at 2–3; *Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 813 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987), and declined to hold such a tort cognizable under the FELA, *id.* at 342; *see also Antalek,* slip op. at 2–3.

This Court is unpersuaded that *Adkins* resolves the issues presented here for two reasons. First, that court's analysis was quite narrow, failing to consider *Jamison*'s sweeping language as well as *Jamison*'s interplay with *Buell.* Second, Teague has asserted physical injury. Thus, while this Court expresses no opinion whether the infliction of purely emotional injury is cognizable under the FELA, *see Buell,* 107 S.Ct. at 1417–18 (discussing, but not deciding, the question), it holds that Teague's claim, including as it does an assertion of physical injury, may not be dismissed. Indeed, the Supreme Court's reasoning in *Jamison,* standing unrenounced, requires no less. While the vintage is old, good law like good wine may be supposed to improve with age. Until the Supreme Court pronounces the vintage soured, this Court will follow it.

## IV. *Conclusion*

AMTRAK's motion to dismiss Teague's claims brought pursuant to the FELA (C.A. No. 88–0661–Y) is DENIED in its entirety. In view of the ruling that Teague's claims can be addressed under the FELA, his claims under Massachusetts common law are preempted by the federal enactment. Accordingly, AMTRAK's motion to dismiss the Teagues' action based on state law claims of intentional and negligent infliction of emotional distress (C.A. No. 88–1543–Y) is GRANTED.

job occurring over a period of months or years." *Kelly's Case,* 17 Mass.App.Ct. 727, 730, 462 N.E. 2d 348 (1984) (involving psychiatric trauma following a layoff notice and subsequent departmental transfer). The Massachusetts legislature promptly narrowed the opportunity for workers compensation as follows: "No mental or emotional disability arising principally out of a bona fide personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury [compensable under the Massachusetts Workers' Compensation Act]." Mass.Gen.Laws ch. 152, sec. 1(7A) as amended by 1986 Mass. Stat. ch. 662, sec. 6.

Surely, if the deluge is imminent, the Congress of the United States will be equally adept as its Massachusetts counterpart in balancing the competing societal interests at issue.