## HELEN J. KELLY'S CASE.

Suffolk. February 10, 1984. — April 11, 1984.

Present: GREANEY, C.J., GRANT, & WARNER, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Emotional distress.

An employee who suffered an emotional breakdown as a result of being told by her employer that she would be laid off from the department in which she had been working and transferred to another department was entitled to workmen's compensation under G. L. c. 152. [729-733]

This court expressed reservations as to the appropriateness of workmen's compensation for mental injuries brought about by an employer's good faith decision to lay off or transfer an employee. [733]

CERTIFICATION to the Superior Court Department of a decision by the Industrial Accident Board.

The case was heard by *Paquet,* J.

*Andrew P. Saltis* for the insurer.

*Robert E. Keane* for the employee.

GREANEY, C.J. This is the insurer's appeal from a judgment for the employee entered in the Superior Court under the workers' compensation act, G. L. c. 152. The judgment reversed the decision of the reviewing board, which had affirmed the decision of a single member denying the employee compensation. The sole issue upon appeal is whether the employee sustained a compensable personal injury arising out of and in the course of her employment when, in August 1977, she suffered an emotional breakdown after being informed by her employer that she had been laid off from her current department and that she would be transferred to another department. We affirm the judgment.

We summarize the facts found by the single member and adopted by the reviewing board.[1] The employee, Helen J. Kelly,

[1] "The findings of the reviewing board are final unless they are wholly lacking in evidential support or tainted by error of law." *Korsun's Case,*

was employed by her employer for twenty-two years prior to August of 1977. At the time of the incidents she worked as an associate training specialist and was totally responsible for the running of the employer's training center. Kelly was happily married, had two grown children, and got along extremely well with her supervisor. Her monthly gross pay, as of August, 1977, was $1,301.

On Friday, August 19, 1977, Kelly's supervisor called her aside to an isolated area in the plant and informed her that the company was cutting back in her department and that she would be laid off. Kelly began to cry and went home early on that date, being unable to compose herself and continue work. Kelly remained upset and cried most of the weekend. On Monday, August 22, 1977, she returned to work and was told she could work as a foreperson in the cable department. Kelly was not pleased to be assigned to that department, and on that date became depressed, developed chest pains, was put in a wheel chair, and was taken to a hospital. She was examined and subsequently put on medication (darvocet and valium). Kelly remained out of work for over six weeks.

On October 5, 1977, Kelly returned to work in the cable department. However, on October 14 she again developed severe chest pains and was taken to the hospital. She thereafter underwent regular psychiatric treatment, lost fifteen pounds, began to have trouble eating and sleeping, and suffered from depression. The single member also found, based upon the testimony of the psychiatrist who had treated her for depression, that Kelly has been totally disabled and unable to work since August 22, 1977, and that her psychiatric problems were "caused by her hearing that she was to be laid off from one department and transferred to another."

The single member decided that Kelly had suffered no industrial injury on either August 22, 1977, or October 14, 1977.[2]

354 Mass. 124, 125 (1968). See *Albanese's Case*, 378 Mass. 14, 15 n.2 (1979). The findings of fact made here are supported by the evidence.

[2] In so deciding, the single member rejected testimony by Kelly concerning her treatment in the cable department, which, if believed, would have made the facts closer to those in *Albanese's Case*, 378 Mass. 14 (1979).

The reviewing board affirmed this decision. In setting aside the board's decision and ordering the payment of temporary total incapacity compensation benefits under § 34 of the act, the judge in the Superior Court expressly relied upon *Albanese's Case,* 378 Mass. 14 (1979).[3]

Our workers' compensation act offers very broad protection to employees. See *Zerofski's Case,* 385 Mass. 590, 592-593 (1982). It has been consistently held that the act should be liberally construed and interpreted wherever possible in favor of the injured employee. *Young* v. *Duncan,* 218 Mass. 346, 349 (1914). See Locke, Workmen's Compensation § 29 (2d ed. 1981). Unlike the compensation acts of many other States, our act does not contain a requirement that an injury occur "by accident," see *Zerofski's Case,* 385 Mass. at 592, and the term "[p]ersonal injury has been broadly defined to include 'whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability.'" *Fitzgibbons's Case,* 374 Mass. 633, 637 (1978), quoting from *Burns's Case,* 218 Mass. 8, 12 (1914). Entitlement to compensation does not depend on the fault of the employer or upon the foreseeability of harm. *Madden's Case,* 222 Mass. 487, 496 (1916). It is settled that the employer must take the worker "as is" with existing disabilities and propensities to injury, see *Madden's Case, supra*; *Zerofski's Case,* 385 Mass. at 593; Locke, Workmen's Compensation at § 173, and without regard to whether a reasonable person would have suffered the injury.

With these principles in mind, we turn to this case. The insurer does not dispute that Kelly became disabled directly as a result of a mental or emotional disorder. It argues, however, that Kelly's mental disorder is not within the coverage

---

[3] The judge was mindful of the rule that the board's decision "is not to be reversed unless it is lacking in evidentiary support or a different conclusion is required as a matter of law." *Corraro's Case,* 380 Mass. 357, 359 (1980). The judge's decision makes clear, however, that he accepted the facts determined by the board (as he was required to do) and that he concluded, under the principles stated in *Albanese's Case, supra,* that those facts required the payment of compensation as matter of law.

of the act. In support of this contention, the insurer presents two theories which, in essence, attempt to distinguish the *Albanese* and *Fitzgibbons* cases from this case. We are not persuaded by either theory.

The insurer argues first that Kelly's emotional disturbance is not a compensable "personal injury" under c. 152, citing *Maggelet's Case,* 228 Mass. 57 (1917), and *Begin's Case,* 354 Mass. 594 (1968). However, as explained in *Fitzgibbons's Case* (374 Mass. at 638), those two decisions "have come to stand for the doctrine of wear and tear." Under this doctrine, the "gradual breaking down or degeneration of tissues caused by long and laborious work is not the result of a personal injury within the meaning of the act." *Maggelet's Case,* 228 Mass. at 61. See generally *Zerofski's Case,* 385 Mass. at 590. While in some cases "[t]he line between compensable injury and mere 'wear and tear' is a delicate one", *id.* at 594, the Supreme Judicial Court has explicitly recognized that a mental injury arising from either a specific stressful work-related incident or a series of such incidents does not fall within the "wear and tear" doctrine and, therefore, is compensable. See *Fitzgibbons's Case, supra* at 638; *Zerofski's Case, supra* at 594-595. The board's findings expressly state that Kelly's psychiatric disorder "was caused by her hearing that she was to be laid off from one department and transferred to another." Thus, her incapacity is directly related to two specific and stressful work-related incidents coming three days apart and not to general tension or stress of the job occurring over a period of months or years. These differences take the case out of the "wear and tear" doctrine.

The insurer's remaining argument relies on *Korsun's Case,* 354 Mass. 124, 128 (1968), for the proposition that an employee's apprehension over the prospect of being laid off or transferred does not arise "out of the nature, conditions, obligations or incidents of employment." As the court noted in *Fitzgib-bons's Case, supra* at 639, "there was a lack of evidence [in *Korsun's Case*] with which to connect the alleged precipitating event to Korsun's employment." There is no such failure to

prove causation in the present case.[4] And as further noted in *Zerofski's Case,* 385 Mass. at 594, the language in *Korsun's Case* (at 128) concerning apprehension about losing one's job refers to injuries caused by the general stress of work which are rendered noncompensable by the "wear and tear" doctrine. We consider *Korsun's Case* to have been limited by later opinions and to be inapplicable to the facts here.

We have given consideration to other theories which might preclude liability. The reference in *Albanese's Case* (378 Mass. at 18) to mental injuries involving "everyday stress" being noncompensable must be taken, when read in the context of the discussion which precedes it, and in connection with the discussion and cases cited in note 4, *supra,* as a reference to whether compensation should be paid for gradually developing mental injuries.[5] Indeed, it is this category of cases (designated "gradual stimulus" cases by Professor Larson, see 1B Larson, Workmen's Compensation Law § 42.23[b], at 7-637 - 7-640 [1982] ) which has caused courts elsewhere the most difficulty, principally because of the potential for fraudulent claims.[6] It is clear, however, that the "gradual stimulus" cases are inapposite to the facts before us, for the reasons made apparent in the *Fitzgibbons* and *Albanese* cases. We have also examined the law

[4] The court also noted in *Fitzgibbons's Case* that the fact the injury may have been caused in part by the employee's personal idiosyncracy is not enough to bring the case within the rule of *Korsun's Case.* It noted that "the event triggering the [personal idiosyncracy] is the relevant criterion in determining whether the injury is compensable." *Id.* at 639.

[5] In this regard attention should also be directed to *Zerofski's Case,* a physical injury case disposed of adversely to the employee under the "wear and tear" doctrine, which suggests, without deciding, that a stricter standard of proof might apply to cases involving gradually developing mental illness. 385 Mass. at 595 n.3. See *Pomerleau* v. *United Parcel Serv.,* 464 A.2d 206 (Me. 1983), which applies a clear and convincing evidence standard to these types of injuries.

[6] Although various approaches have been adopted to deal with this problem, the emerging trend seems to follow the so-called "Wisconsin rule" or "objective test." To be compensable under this rule, the injury must result from gradual stimuli that are sufficiently more damaging to the employee than the day-to-day stresses which all employees must face. See e.g. *Sloss* v. *Industrial Commn.,* 121 Ariz. 10 (1978); *Townsend* v. *Maine Bureau of Pub. Safety,* 404 A.2d 1014 (Me. 1979); *Swiss Colony Inc.* v. *Department of Indus., Labor & Human Relations,* 72 Wis.2d 46 (1976).

elsewhere and have not found it to be helpful.[7] Nor are we persuaded by the notion that compensation should be denied because mental injuries are more difficult to substantiate, and therefore more prone to fabrication.[8] See discussion in Cohen, Workmen's Compensation Awards for Psychoneurotic Reactions, 70 Yale L.J. 1129, 1137 (1961). "In the last analysis, the problem of malingering is one of fact, which must be left to the skill and experience of medical and psychiatric experts, and of compensation administrators, who usually manage in time to develop considerable facility in detecting malingerers at the factfinding level." Larson, Mental and Nervous Injury in Workmen's Compensation, 23 Vand. L.Rev. 1243, 1259 (1970). We conclude that the facts in this case are governed by the *Albanese* and *Fitzgibbons* cases, which permit compensation for mental injuries caused by "identifiable stressful work-

---

[7] The majority of jurisdictions which have dealt with sudden stimuli cases have awarded compensation. See e.g., *Pathfinder Co.* v. *Industrial Commn.*, 62 Ill. 2d 556 (1976); *Wolfe* v. *Sibley, Lindsay & Curr. Co.*, 36 N.Y. 2d 505 (1975); *Bailey* v. *American Gen. Ins. Co.*, 154 Tex. 430 (1955); *Burlington Mills Corp.* v. *Hagood*, 177 Va. 204 (1941). Those few decisions which deny compensation for injuries caused by sudden stimuli tend to do so either because the employee failed to prove causation, e.g., *DeAdwyler* v. *Industrial Commn.*, 86 Ill. 2d 106 (1981), or because of the court's interpretation of particular statutory requirements in its State's worker's compensation act, such as requirements that the condition result from an "accident" or that a physical stimulus be the precipitating event. See, e.g., *Hanson Buick Inc.* v. *Chatham*, 163 Ga. App. 127 (1982); *School Dist. No. 1* v. *Department of Indus., Labor & Human Relations*, 62 Wis.2d 370 (1974). See also *Seitz* v. *L.&R. Indus. Inc.*, R.I. (1981) (437 A.2d 1345 [R.I. 1981]) (denying compensation under a statute like c. 152 on facts analogous to those in *Albanese's Case*). By contrast, in the instant case causation has been established. Moreover, c. 152 contains no requirement that an injury occur by "accident" in order to be compensable, nor does it distinguish between mental and physical injuries. As a general matter, decisions elsewhere must be viewed with caution because of the differences between other worker's compensation statutes and c. 152, either by reason of statutory text or as interpreted by decisional law.

[8] It is important to note that considerations which may support a stricter standard of proof of causation in gradual stimulus cases are not present here since there was no evidence that Kelly had a preexisting mental disorder or was subject to outside stress and since the single member found, based on the psychiatric testimony, that the layoff and transfer were the sole cause of Kelly's mental illness.

related incidents" (378 Mass. at 18), occurring in employment looked at "in any of its aspects" (374 Mass. at 638).

We must, however, say that we find the result troubling and one which may involve a larger extension of liability than the last cited cases contemplated. In this regard, it may be that a rule is called for which would exclude from compensation mental injuries brought about by good faith decisons by an employer to lay off or transfer employees.[9] The possible adoption of such a rule would necessarily have to consider (as a matter of policy) whether mental injuries like the one suffered by Kelly should be compensated under G. L. c. 152 as a legitimate cost of doing business or whether they should instead be borne by the public under programs such as unemployment compensation and social security disability (keeping in mind that medical benefits under the latter programs may not exist or may be more limited than the benefits payable under c. 152). In view of the *Fitzgibbons* and *Albanese* cases, the limitations of compensation on facts like those before us are more properly made by the Legislature or by the Supreme Judicial Court.

The judgment of the Superior Court is affirmed. Costs and expenses of appeal shall be allowed by a single justice. See G. L. c. 152, § 11A; *Albanese's Case*, 378 Mass. at 19, and cases cited.

*So ordered.*

---

[9] See, however, *Foley* v. *Polaroid Corp.*, 381 Mass. 545 (1980), where a claim by an employee for intentional infliction of emotional distress arising out of an alleged wrongful termination from work while criminal charges were pending was held to be exclusively covered by worker's compensation. The facts in *Foley* appear to be closer to the facts in *Albanese's Case*.