Rosemary J. SAROCCO, as Administratrix of the Estate of Phillip V. Sarocco, and individually, Albert T. Hopper, Ethel Speranzo and Nicholas Speranzo, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY and Monsanto Company, Defendants.

Civ. A. No. 94–30136–MAP.

United States District Court, D. Massachusetts.

March 30, 1995.

William B. Barry, Pittsfield, MA, Sidney B. Silverman, Gregory E. Keller, New York City, for Rosemary J. Sarocco, Albert T. Hopper, Plaintiff, Ethel Speranzo, Plaintiff, Nicholas Speranzo.

Joseph G. Blute, Daniel J. Gleason, Nutter, McClennen & Fish, Boston, MA, Robert J. Shaughnessy, Steven R. Kuney, Williams & Connolly, Washington, DC, for General Elec. Co.

John A.K. Grunert, Richard P. Campbell, Campbell & Associates, P.C., Boston, MA, for Monsanto Co.

### MEMORANDUM REGARDING DEFENDANT GENERAL ELECTRIC'S MOTION TO DISMISS

(Docket No. 26)

PONSOR, District Judge.

## I. INTRODUCTION

The plaintiffs are retired workers and the families of deceased employees who manufactured electrical transformers at a General Electric Company facility in Pittsfield, Massachusetts. The defendants are General Electric Company ("GE") and Monsanto Company ("Monsanto").

According to the complaint, former workers at the Pittsfield GE facility contracted various cancers and other illnesses from prolonged workplace exposure to a number of known, deadly carcinogens—Arcolor, Pyranol and certain other epoxies containing polychlorinated biphenyls (PCBs), polychlorinated dibenzofurans (PCDFs) or trichlorobenzenes—all manufactured by Monsanto. Plaintiffs are careful to explain that they are not seeking damages for their initial workplace exposure to these toxins. They readily admit that their exclusive remedy for these injuries is under the administrative scheme set forth in the Massachusetts Workers Compensation Act, Mass.Gen.L. ch. 152, § 24.

Instead, plaintiffs contend that GE's medical personnel intentionally misinformed and negligently advised workers as to the need for serious treatment of symptoms resulting from exposure to these chemicals. Plaintiffs allege that as a result of the fraudulent misrepresentation by G.E.'s medical personnel, their conditions went unattended causing them serious harm, including in some cases death.

General Electric has moved for dismissal of the complaint based on the exclusivity by the Massachusetts Workers Compensation Act. Mass.Gen.L. ch. 152, § 24.

Plaintiffs respond that the intentional and fraudulent concealment of the consequences of workplace exposure to toxins constitutes a cognizable claim *separate and apart* from the workers' compensation scheme. Conceding no authority directly on point in Massachusetts, they point to decisions from other state jurisdictions that permit actions based on allegations very similar to those set forth by the plaintiffs here.

Whatever the approach in other jurisdictions, this court must conclude that the provisions of Mass.Gen.L. ch. 152 and controlling Massachusetts precedent compel dismissal of all claims against GE. The court's reasons are set forth below.

## II. FED.R.CIV.P. 12(B)(6)

The appropriate inquiry on a motion to dismiss is whether, based on the allegations of the complaint, the plaintiffs are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, the court must accept as true all the factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Bergeson v. Franchi,* 783 F.Supp. 713 (D.Mass.1992) (citing *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990)). If under any theory the complaint is "sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied." *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987); *accord Cuddy v. Boston,* 765 F.Supp. 775, 776 (D.Mass.1991).

## III. *THE COMPLAINT*

The complaint sets forth the single claim of breach of fiduciary duty by GE's in-house physicians and other medical personnel. The facts alleged are as follows.

For decades, industrial workers were routinely exposed to deadly PCBs, PCDF's and other toxic compounds typically used in the manufacture and repair of electrical transformers at General Electric's Pittsfield facility (hereinafter the "Plant"). Plaintiffs detail above normal rates of leukemia and intestinal and bladder cancer among retirees from GE's Pittsfield facility. Chloracne, later developing into deadly skin cancers, plagued many workers and retirees who routinely handled chemicals without the benefit of gloves, safety equipment or protective clothing. The averments summarize the results of numerous scientific studies which conclude that the alarming rate of severe health problems among GE workers at the transformer Plant was directly caused by exposure to these toxins.

Plaintiffs allege that GE and Monsanto made a concerted effort to convince workers that their health problems were unrelated to exposure to PCB's and PCDF's. As far back as 1936, it is alleged that GE knew that workers should be screened for sensitivity to Pyranol and that adverse skin-reactions to Pyranol were often accompanied by liver damage. Despite GE's knowledge of these dangers, workers who complained about and sought treatment for Pyranol-related skin ailments were told that the condition was no more serious than ordinary acne and that with continued exposure they would develop resistance to the chemicals. In short, according to plaintiffs, physicians who worked in the Pittsfield plant infirmary told workers that exposure to Pyranol was not dangerous and that there was no grounds for them to be concerned about their health.

Eventually, GE performed tests to determine the level of PCB's in workers' blood streams. Plaintiffs say these test results were kept secret and, consequently, workers were prevented from receiving adequate treatment for the myriad symptoms and illnesses that resulted from exposure to these toxic chemicals. It is further alleged that GE made false statements to the Massachusetts Departments of Public Health and Labor and Industries in order to conceal the high rates of cancer among plant workers exposed to Pyranol and other PCB-laden chemicals.

Plaintiffs contend that the claims of the Estate of Phillip Sarocco and of Ethel Speranzo are typical of the class of persons on whose behalf this suit has been brought. Sarocco worked in the transformer repair section of the GE plant from 1963 until 1986. He developed bladder cancer in 1986 and retired. By 1990, the cancer had metastasized, infecting the lungs and bone. Sarocco died of cancer in 1993.

Sarocco was routinely exposed to Pyranol in the course of his employment. His autopsy revealed that his PCB level, seven years after his last exposure to Pyranol, was 2,200 parts per billion—twice the level in the general population.

Ethel Speranzo worked at the GE facility in Pittsfield from 1962 to 1986. She used epoxy resins in the construction of voltage regulators and small transformers. The section of the plant she worked in had been contaminated by Pyranol due to spills and leakages that first occurred in the 1930's. In this area, workers routinely heated their lunch in ovens used to bake and cure the epoxy-laden transformers. Until 1985 there was no sink for hand washing in this portion of the plant. No warnings about the danger of these chemicals were given to employees. Ethel Speranzo has suffered from skin cancer for twenty-five years. She also has ovarian and breast cancer that has required a hysterectomy and a double mastectomy.

Plaintiffs contend that throughout the course of their employment, the infirmary physicians consistently placed GE's financial interest above the interests of the workers as their patients. Plaintiffs claim that this course of conduct amounts to fraudulent misrepresentation and constitutes a breach of fiduciary duty by GE-employed physicians.

## IV. *DISCUSSION*

The allegations pose the following legal issue: Does the Massachusetts Workers'

Compensation Act, Mass.Gen.L. ch. 152, § 1 *et seq.* (the "Act" or ch. 152), provide the sole remedy for workplace injuries resulting from an employer's fraudulent misrepresentations that conceal the nature and extent of work-related illnesses, thereby depriving employees of medical treatment and further aggravating their illnesses? It is a question of first impression in this jurisdiction. Fortunately, well-reasoned decisions of the Massachusetts' appellate courts, the "ultimate expositors of state law," provide a clear path for this court to follow in making its ruling. *Woods v. Friction Materials,* 30 F.3d 255, 263 (1st Cir.1994).

### A. *Mass.Gen.L. ch. 152: The Massachusetts Workers' Compensation Act*

Chapter 152 affords broad protection to employees injured at work. *Kelly's Case,* 17 Mass.App. 727, 729, 462 N.E.2d 348 (1984). In accordance with the Act's legislative design, Massachusetts courts have liberally construed the term "personal injury," as defined in Mass.Gen.L. ch. 152, § 1, and the concept "arising out of and in the course of employment" contained in Mass.Gen.L. ch. 152, § 26. *See Id.;* L. Locke, *Massachusetts Workmen's Compensation, 2d* (Practice Series Vol. 29) §§ 25 and 26 (1968).

 Under Massachusetts law, there is no qualification that an on-the-job injury be accidental in order to receive workers' compensation. *Zerofski's Case,* 385 Mass. 590, 592, 433 N.E.2d 869 (1982). Intentional conduct by an employer which causes injury is covered by the Act. *Foley v. Polaroid Corporation,* 381 Mass. 545, 413 N.E.2d 711 (1980). Moreover, injuries attributable in part to pre-existing conditions are compensable under the Act if aggravated by a workplace accident that results in disability. *See Madden's Case,* 222 Mass. 487, 111 N.E. 379 (1916). Compensation is provided whether the work-related disability results from a physical or an emotional harm. *Fitzgibbon's Case,* 374 Mass. 633, 373 N.E.2d 1174 (1978).

"Entitlement to compensation does not depend on the fault of the employer or upon the foreseeability of harm." *Kelly's Case,* 17 Mass.App. at 729, 462 N.E.2d 348. Even personal injuries that result from deliberate or willful employer conduct are compensable under the Act if the personal injury arises out of and in the course of employment. Mass.Gen.L. ch. 152, § 28 (awarding double damages for injuries resulting from serious and willful misconduct). *See* L. Nason & R. Wall, *Massachusetts Workers' Compensation Reform Act* (1995), supplement to Locke, *Workmen's Compensation.*

### B. *Scope of § 24: Exclusivity of Remedy Provision*

At the same time, Massachusetts courts have long recognized "that the general term 'personal injuries' encompasses 'wrongs which would not be personal injuries under the workmen's compensation act.'" *Foley,* 381 Mass. at 551, 413 N.E.2d 711, quoting *Madden's Case,* 222 Mass. 487, 492, 111 N.E. 379 (1916). Notwithstanding § 24, the Act's exclusivity provision [1], the Supreme Judicial Court has over the course of decades carved out specific exceptions for defamation, malicious prosecution, false imprisonment, invasion of the right to privacy, and "kindred tortious acts" that may be the basis for independent actions at law. *Id.*

*Foley* provides the methodology to be used in determining the type of tort claims an employee may bring against his or her employer at common law. In discussing why the exclusivity provision of the Act does not bar a common law action for defamation, the *Foley* court drew a distinction between physical or mental injuries arising out of employment and an injury to reputation, "irrespective of any physical or mental harm." *Foley,* 381 Mass. at 552, 413 N.E.2d 711. The court reasoned that "a [workers'] compensation claim could not purport to give relief for the main wrong of injury to reputation." *Id.* For this reason, malicious prosecution of an employee can give rise to a common law

1. Section 24 states in pertinent part: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury therein occurring, to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right...." *See Foley,* 381 Mass. at 548, 413 N.E.2d 711.

claim "since the essence of the tort is not physical or mental injury, but the interference with the right to be free from unjustifiable litigation." *Id.* In the case of both of these torts, the resulting physical or mental harm is "not an indispensable ingredient of the tort." *Id.*

In contrast, the SJC ruled in the same case that the employee's claim for intentional infliction of emotional distress *was* barred by the compensation scheme, even though it was based on the same employer conduct that gave rise to the viable common law claims of defamation and malicious prosecution. *Id.* The SJC frankly noted the "conceptual problem" this analysis created, since the elements of damages to the plaintiff's reputation in *Foley I* were physical and mental injuries. *Id.* Nonetheless, the court explained that

> the key to whether the Workmen's Compensation Act precludes a common law right of action lies in the nature of the injury for which plaintiffs makes claim, not the nature of the defendant's act which the plaintiff alleges to have been responsible for that injury.

*Id.,* quoting *Gambrell v. Kansas City Chiefs Football Club, Inc.,* 562 S.W.2d 163, 168 (Mo. Ct.App.1978).

Plaintiffs' argument is that fraudulent misrepresentation or breach of a doctor's fiduciary duty is akin to defamation or false imprisonment and is therefore not the type of personal injury contemplated by ch. 152. Plaintiffs contend that intentional workplace torts give rise to a separate legal action if the essence of the tort is non-physical and the injury resulting is not a risk of employment.

██ This is not the test set forth in *Foley.* Common law actions are barred by the exclusivity of remedy of the Act if "the plaintiff is shown to be an employee; his condition is shown to be a 'personal injury' within the meaning of the compensation act; and the injury is shown to have arisen 'out of and in the course of employment.'" *Id.* at 548–549, 413 N.E.2d 711.

██ Whether pled as a breach of fiduciary duty or as fraudulent misrepresentation, it is inescapable that the "main wrong" alleged by the GE workers was an occupational ill-ness—unquestionably a personal injury as defined by the Act. *Pasquale Squillante's Case,* 389 Mass. 396, 450 N.E.2d 599 (1983) (asbestosis). In addition, the harm resulted from workplace exposure to PCBs and attendant physical examinations at the Plant's infirmary. The harms were directly attributable to the employer's conduct, i.e. arose out of and in the course of employment.

The type of injury these plaintiffs experienced as a result of their employer's alleged misrepresentations is different from the injury to reputation discussed in *Foley.* In this instance, plaintiffs' physical injuries followed ineluctably from GE's purported tortious conduct and are therefore an "indispensable ingredient" of their claim for relief. *Foley,* 381 Mass. at 552, 413 N.E.2d 711. In other words, the misrepresentation did not cause an injury "irrespective of the physical ... harm." *Id.* at 552, 413 N.E.2d 711.

It is of course theoretically possible to imagine a claim for misrepresentation or breach of fiduciary duty where the nature of the harm is not necessarily a personal injury as defined by the Act. For example, the exclusivity of remedy provision of the Act did not bar an employee's legal claim of intentional interference with advantageous relations against her employer. *Felinska v. New Eng. Teamsters and Trucking Industry Pension Fund,* 855 F.Supp. 474, 478 (D.Mass. 1994). The *Felinska* court explained that these claims could go forward because plaintiff was seeking contract damages, not compensation for personal injuries. *Id.* In this instance, plaintiffs' misrepresentation claim seeks only to recover for personal injuries compensable under the workers' compensation scheme.

C. *Willful and Egregious Employer Misconduct*

██ It is well established that the nature of the employer's conduct, no matter how unsavory, cannot be a factor in determining whether an injury is compensable under the Act. The plain language of § 28, entitled "Willful misconduct of employer," expressly provides for employer liability if "an employee is injured by reason of the serious and willful misconduct of an employer or of

any person regularly entrusted with and exercising the powers of superintendence." Mass.Gen.L. ch. 152, § 28; *see also Decker v. Black and Decker Mfg.*, 389 Mass. 35, 36, 449 N.E.2d 641 (1983). Moreover, courts have consistently refused to narrow § 28 by creating an egregious conduct exception. Judicial inquiry has invariably focused on the type of harm suffered, not the nature of the defendant's conduct which caused the injury. *See, e.g., Cullinan v. Monsanto Company*, 1986 WL 8418 (D.Mass. July 29, 1986), citing *Foley*.

In *Cullinan*, the plaintiff alleged that Monsanto intentionally and fraudulently misrepresented information concerning the health risks and carcinogenicity of polyvinyl chlorides (PVCs). The employee suffered severe injury and ultimately died of malignant lymphoma as a consequence of twenty-five years of exposure to PVCs. Nonetheless, the claim sounding in deceit and fraudulent misrepresentation was dismissed due to the exclusivity of remedy provided by the Act.

Similarly, in *Anzalone v. Massachusetts Bay Transportation Authority*, 403 Mass. 119, 526 N.E.2d 246 (1988), plaintiff had just returned to work after suffering a disability from a job-related lung ailment. It was alleged that the supervisor sent workers to plaintiff's unventilated office to smoke cigarettes and paint outside his office door. *Id.* Consequently, plaintiff Anzalone suffered a relapse and ultimately became totally disabled. *Id.* at 121–122, 526 N.E.2d 246. The SJC dismissed the employee's common law claim of intentional infliction of emotional distress against his employer. The *Anzalone* court held that the supervisor's intentional misconduct arose in the course of employment and therefore plaintiff's claims were covered exclusively by ch. 152. *Id.* at 124, 526 N.E.2d 246.

*Cullinan* and *Anzalone* make it clear that General Electric's purported willful misconduct, however systemic and widespread and no matter how dire its consequences for the workforce, does not fall into some egregious misconduct exception to the exclusivity of remedy of the Act.

### D. *Misrepresentation by GE's Medical Personnel*

█ Plaintiffs maintain that the facts of this case present a brand of employer misconduct one step removed from the supervisory misconduct set forth in *Cullinan* or *Anzalone,* requiring this court to craft another judicial exception to the workers' compensation bar. Complainants heavily rely on a speculative footnote in *Cullinan* which in large measure presaged the claim brought by these plaintiffs. In that case, Judge Freedman dismissed the employee's common law deceit claim against Monsanto because the physical injuries arose out of and in the course of employment, but conjectured that "a different case might have been presented ... where employer fraudulently deceives employee as to the existence of employee's compensable injury or disease." *Cullinan v. Monsanto*, 1986 WL 8418 at *5 n. 7.

Pursuing the dicta in this footnote, plaintiffs point to other jurisdictions that have recognized that an employer who "engages in intentional misconduct *following* a compensable injury may be held liable in an action at law for aggravation of the injury." *Johns–Manville Products Corp. v. Superior Court of Contra Costa; Reba Rubkin, Real Party in Interest,* 27 Cal.3d 465, 477, 165 Cal.Rptr. 858, 612 P.2d 948 (1980); *see also Martin v. Lancaster Battery Company, Inc.,* 530 Pa. 11, 606 A.2d 444 (1992); *Millison v. E.I. du Pont de Nemours & Co.,* 226 N.J.Super 572, 545 A.2d 213 *aff'd.,* 115 N.J. 252, 558 A.2d 461 (1989); *Delamotte v. Midland Ross Corp.,* 64 Ohio App.2d 159, 411 N.E.2d 814 (1978). Plaintiffs argue that the *Johns–Manville* decision is indicative of a trend that Massachusetts should follow by permitting an action at law when an employer fraudulently deceives an employee as to the existence of a workplace disease or injury.

Unfortunately for plaintiffs here, the Massachusetts workers' compensation scheme does not recognize what plaintiffs consider to be the crucial distinction that sets their claim apart from other claims of willful employer misconduct. Plaintiffs wish to contrast an injury caused by an employer's intentional concealment of a workplace hazard—which they concede falls within Worker's Compen-

sation—from an enhanced injury resulting from misrepresentations by medical personnel which obscure the severity or nature of the original harm. As will be explained, in either case § 28, the "willful misconduct of the employer" provision, applies.

With respect to employer liability the Act does not distinguish willful misconduct of the employer in the person of a supervisor from misconduct by a physician working for an employer, whether the doctor is considered as supervisory personnel or a co-employee [2]. Section 28 expressly provides for employer liability for misconduct of "any person regularly entrusted with and exercising the powers of superintendence." Court decisions have consistently held that intentional torts are compensable within the Workers' Compensation scheme if committed by a fellow worker acting within the course of his or her employment and in furtherance of the employer's interest. *O'Connell v. Chasdi*, 400 Mass. 686, 690–691, 511 N.E.2d 349 (1987). To hold otherwise would vitiate the willful misconduct provision of the Act. On the other hand, if a fellow worker was not acting "within the course and in furtherance of" his employment a cause of action may lie, but only against the co-worker and not against the employer. In either case, the Act does not permit an action at law against the employer for intentional misconduct by a fellow worker. *Id.* at 690, 511 N.E.2d 349.

In sum, the distinction between injuries caused by willful misconduct by the employer's supervisory personnel and injuries resulting from intentional torts committed by a co-worker is without consequence for these plaintiffs. Whether the GE doctors are considered supervisory personnel or fellow workers, the only way plaintiffs may seek relief from GE is through the workers' compensation scheme.

### E. Policy Decisions and Federal Diversity Jurisdiction

The reasoning in the California Supreme Court's decision in *Johns–Manville* is not helpful to plaintiffs. In that case, an employee was permitted to bring an action at law against his employer for fraudulently concealing that he was suffering from an occupational disease caused by the ingestion of asbestos. The California Supreme Court held that the exclusivity provision of the California Workers' Compensation Act did not bar a cause of action for the aggravation of the disease, as distinct from the hazards of employment. *See generally, Johns–Manville Products Corp. v. Superior Court of Contra Costa*, 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948. As the defendant notes, this holding rests on a line of California decisions fundamentally at odds with Massachusetts case law. *See Id.* at 472–475, 165 Cal.Rptr. 858, 612 P.2d 948.

The Massachusetts courts have developed a fairly consistent, inclusive conception as to what injuries are compensable under the Act, repeatedly finding that intentional misconduct by an employer, no matter how egregious, that results in physical harm to an employee may be remedied only under the Act. On the other hand, the *Johns–Manville* court forthrightly noted that the many exceptions California courts have grafted onto the exclusivity provision of that state's workers' compensation act lack a "tidy and consistent rationale." *Id.* at 865, 612 P.2d 948. Ultimately, the holding of the *Johns–Manville* court was a clear policy decision by the high court that the state legislature did not intend to insulate flagrant employer misconduct from tort liability. *Johns–Manville*, 27 Cal.3d at 478, 165 Cal.Rptr. 858, 612 P.2d 948.

---

**2.** Some jurisdictions have developed a special category of liability for injuries to employees resulting from the misconduct of medical personnel under a "dual capacity doctrine." *See Austin v. Johns–Manville Sales Corp.*, 508 F.Supp. 313, 317–18 (D.Me.1981). In these circumstances, liability against an employer is established by presuming "distinct separate legal persona, not just a separate theory of liability of the same legal person" in the employer's commitment of intentional misconduct related to medical treatment. *Id.* at 318, citing Larson, *Workmen's Compensation Law*, § 72.80 (1980 Supp.); *Johns–Manville v. Contra Costa Superior Court*, 27 Cal.3d at 476, 165 Cal.Rptr. 858, 612 P.2d 948 (recognizing that California has adopted the "dual capacity doctrine"). Here, it does not appear that the medical personnel could be considered to have a separate persona from GE. For this reason, this doctrine is of limited value here. *See Barrett v. Rodgers*, 408 Mass. 614, 615–616, 562 N.E.2d 480 (1990).

In contrast, Section 28 of the Massachusetts Act expressly provides for a remedy of double compensation for workplace injuries resulting from serious and willful employer misconduct, clearly indicating the legislative design for a special remedy under the Act for this sort of misconduct. This double compensation has long been an essential part of the "beneficent design" underlying the compensation act. *Young v. Duncan*, 218 Mass. 346, 349, 106 N.E. 1 (1914); Nason and Wall, *Massachusetts Workers' Compensation Reform Act*, § 10.8, 289 (1995).

Whatever other jurisdictions may require, the Act represents the Massachusetts legislature's deliberate balancing of the competing interests of workers and employers. *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 350, 446 N.E.2d 1033 (1983). The SJC has expressed great deference to this balance. "Deficiencies in the compensation awards pursuant to the present statute are matters of concern for the Legislature" and any change in the Act which would permit tort litigation by an employee against the employer is a public policy decision for the Legislature. *Longever v. Revere Copper & Brass Inc.*, 381 Mass. 221, 225, 408 N.E.2d 857 (1980); *accord Barret v. Rodgers*, 408 Mass. 614, 619, 562 N.E.2d 480 (1990) (citing *Longever*).

As the First Circuit has frequently noted, it is not a diversity court's proper place to blaze new and unprecedented trails in state jurisprudence. *Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1224 (1st Cir.1990). This maxim is especially applicable here where a ruling in plaintiffs' favor would carve out a judicial exception without precedent to the exclusive remedial provision of the Workers' Compensation Act. *See Woods v. Friction Materials, Inc.*, 30 F.3d 255, 263 (1st Cir. 1994) (absent extreme circumstances federal courts are bound by the constructions placed upon state statutes by state courts).

Moreover, at oral argument plaintiffs were queried as to whether the issue now before the court warranted certification to the SJC as a question of first impression. Plaintiffs did not think certification was necessary and argued that previous Massachusetts decisions supported their position. However, a careful review of the relevant law "furnishes no encouragement for so venturesome a step" as plaintiffs would have the court take. *Kotler v. American Tobacco Co.*, 926 F.2d at 1225.

## F. *Loss of Consortium*

█ In 1985 the Act was amended to provide workers' compensation benefits for loss of consortium claims. *Williams v. Westover Finishing Co., Inc.*, 24 Mass.App. 58, 60 n. 3, 506 N.E.2d 166 (1987). Only those claims which arose before the Amendment are not barred by the exclusivity provision of the Act. *Id.* Plaintiffs contend that the claims for loss of consortium for two of the plaintiffs, Nicholas Speranzo and Rosemary Sarocco, arose prior to 1985 and are not barred by the Act. *See Foley v. Polaroid Corp.*, 400 Mass. 82, 84 n. 2, 508 N.E.2d 72 (1987) (loss of consortium actions barred only if injuries occurred after 1985). On the facts as alleged, it is indisputable that the injuries to Ethel Speranzo and Phillip Sarocco occurred prior to 1985; both of these workers retired from GE in 1986. However, the allegations make it clear that the loss of consortium of their plaintiff spouses occurred after 1985. *Olsen v. Bell Telephone Laboratories, Inc.*, 388 Mass. 171, 445 N.E.2d 609 (1983), explains that loss of consortium is an independent cause of action and the date of its accrual is determined separately from that of the spouse's injury. For this reason, plaintiffs' loss of consortium claims will be dismissed without prejudice. Since the facts as alleged by plaintiffs do not permit the court to determine whether the loss of service or society occurred prior to 1985, plaintiffs seeking damages for loss of consortium may file an amended complaint clarifying when the claims for consortium arose, within twenty (20) days.

## V. *CONCLUSION*

For the reasons set forth above, defendant General Electric's Motion to Dismiss is hereby ALLOWED. A separate order will issue.