# United States Court of Appeals
## For the First Circuit

No. 02-1758
No. 02-2279
No. 02-2280

BRIAN ANDRESEN and DIANE ANDRESEN,
Plaintiffs, Appellants,

v.

DR. JOHN DIORIO, SHAW'S SUPERMARKETS, INC.,
and J SAINSBURY, PLC,
Defendants, Appellees.

————————

BROCKTON HOSPITAL,
Defendant.

————————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Robert E. Keeton, <u>U.S. District Judge</u>]

————————

Before
Boudin, <u>Chief Judge</u>,
Selya, <u>Circuit Judge</u>,
and Siler,[*] <u>Senior Circuit Judge</u>.

————————

<u>Malcolm J. Barach</u> for appellants.
<u>Josiah M. Black</u> with whom <u>Kenneth M. Bello</u> and <u>Mintz, Levin,</u>
<u>Cohn, Ferris, Glovsky and Popeo, P.C.</u> were on brief for appellees
Shaw's Supermarkets, Inc. and J Sainsbury, PLC.
<u>James S. Hamrock, Jr.</u> with whom <u>Hamrock, Tocci & Cass</u> was on
brief for appellee Dr. John Diorio.

————————

November 12, 2003

————————

————————

[*]Of the Sixth Circuit, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>. Brian Andresen, joined by his wife, appeals from the district court's dismissal of his lawsuit against his former employer (Shaw's Supermarkets, Inc.), its British parent company (J Sainsbury PLC) and a physician (Dr. John Diorio). Because the case was disposed of on motions to dismiss, we accept for purposes of judicial review the factual allegations of the complaint, <u>Rogan</u> v. <u>Menino</u>, 175 F.3d 75, 77 (1st Cir. 1999), <u>cert. denied</u>, 528 U.S. 1062 (1999), which are briefly as follows.

Prior to the termination of his employment Andresen worked at Shaw's at its store in East Bridgewater, Massachusetts. Shaw's was aware that Andresen suffered from depression. During his night shift on January 20-21, 2000, Andresen had a conversation with a co-worker "about guns, revenge, life and politics"; Andresen so describes the subject in his complaint without disclosing its substance beyond saying that the co-worker "distorted" the conversation in describing it to Shaw's management.

Shaw's immediately suspended Andresen for three days, consulted with Dr. Diorio, and contacted the Brockton, Massachusetts, police. Summoned on January 24, 2000, to meet with Shaw's officials and union representatives, Andresen was told that Shaw's was terminating him pursuant to its "zero-tolerance" policy as to workplace violence. When Andresen left the building with his final paycheck, two Brockton police officers alerted by Shaw's were waiting for him.

-2-

The officers told Andresen that he had to go to the hospital in Brockton for an evaluation, adding (falsely, according to Andresen) that they had a "pink slip," apparently an order or certificate for involuntary commitment. Andresen was held in isolation in the hospital for three days and then released after the hospital concluded that he was not delusional or a danger to himself or others. According to Andresen, Dr. Diorio furnished to Shaw's confidential and inaccurate medical information about Andresen before he was terminated. Further, Andresen alleged that Shaw's personnel later described Andresen as unstable or insane.

Andresen, together with his wife who claimed loss of consortium, brought suit in federal court against Shaw's, J Sainsbury and Dr. Diorio; the hospital was also sued but is not a party to these appeals. The complaint included a section 1983 claim, 42 U.S.C. § 1983 (2000), premised on an alleged Fourth Amendment violation, and state claims under Massachusetts law for violation of civil rights, invasion of privacy, intentional and negligent infliction of emotional distress, negligence, and defamation.

In due course, the district court dismissed all claims against J Sainsbury for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). It dismissed the claims against Shaw's for failure to state a claim, id. 12(b)(6), and entered judgment on the pleadings for Dr. Diorio. Id. 12(c). The district court's

reasoning, set out in several orders, is summarized below where relevant to the issues that Andresen now raises on appeal. Our review is de novo. Rogan, 175 F.3d at 77; Int'l Paper Co. v. Town of Jay, 928 F.2d 480, 482 (1st Cir. 1991).

We begin with the dismissal of the claims against J Sainsbury. In moving to dismiss, the parent company filed an affidavit averring that it is based in London; has no office or place of business in Massachusetts; owns no property there; has no bank account, telephone listing or mailing address there; does not sell goods or provide services in Massachusetts; is not registered with the Massachusetts Secretary of State and has no agent to receive process there. Its only connection with Massachusetts, said the affidavit, is that it owns Shaw's.

Once J Sainsbury contested personal jurisdiction, the burden fell upon Andresen to proffer evidence showing that the court did have jurisdiction. United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp., 987 F.2d 39, 44-45 (1st Cir. 1993)("United Elec. II"). This would require Andresen to show that J Sainsbury was present in Massachusetts (the traditional basis for jurisdiction) or had such connections with the state or with the events within the state pertinent to the claim as to permit the constitutional exercise of jurisdiction under a state long arm statute. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980).

-4-

An out-of-state parent's controlling stock interest in a Massachusetts corporation does not alone create jurisdiction over the parent. United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992)("United Elec. I"). Similarly, Andresen's claim that the parent has "overall financial and policy control" over its subsidiary is not enough. Such control is inherent in ownership and, if overall control were sufficient, every parent would be present wherever a wholly owned subsidiary was present in a state. For this purpose, a separately managed company is a separate entity.

Andresen might have offered to show that the parent's control in this instance was so pervasive and detailed as to invoke the sham or alter ego labels. United Elec. I, 960 F.2d at 1091. Instead, in response to J Sainsbury's motion and affidavit, Andresen offered only a few news articles. If considered at all, the articles show only that Shaw's had employed an interim president who formerly worked for J Sainsbury and that the parent was generally aware of its subsidiary's business plans. Thus, the district court's dismissal of the claims against J Sainsbury was correct and the balance of our discussion concerns the claims against Shaw's and Dr. Diorio.

Starting with the only federal claim asserted in the complaint (there are two pertinent counts but effectively one claim), Andresen charged that the defendants violated his Fourth

-5-

Amendment right against unlawful seizure and so are liable under section 1983.  42 U.S.C. § 1983 (2000).  The Fourth Amendment, through the Fourteenth Amendment, does protect individuals against unlawful seizure by the state, and the section 1983 remedy is available against state actors or others acting under color of state law.  United States v. Price, 383 U.S. 787, 794 n.7 (1966); Yeo v. Town of Lexington, 131 F.3d 241, 249 n.3 (1st Cir. 1997) (en banc), cert. denied, 524 U.S. 904 (1998).

The district court dismissed the Fourth Amendment claim because neither of the defendants fell into either category.  On appeal, Andresen's main brief asserts that the seizure of Andresen "involved state actors, namely, the police officers . . . ." When the answering briefs rejoined that the defendants were not the police officers, Andresen's reply brief said that "the totality of the circumstances" reveals an "intertwining" and a "conspiratorial scheme" involving the private defendants and the state actors.  This argument, even if adequate, would be forfeit because it is presented for the first time in the reply brief.  Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir. 1992).

In any event, the very limited elaboration of the argument in the reply brief offers only these pertinent factual claims: that Dr. Diorio provided confidential medical information to Shaw's; that Shaw's advised the police of what it thought Andresen had said to his co-worker and what Dr. Diorio had told Shaw's; and that the

police took Andresen to the hospital, perhaps claiming inaccurately that they had commitment papers.  Yet it is settled that the fact that private parties give the police information on which official action is then taken does not by itself convert the private parties into state actors.  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 & n.2 (1st Cir. 1996).

If the information given to the police were culpably false or in breach of obligations under state law, state claims might exist against the private parties, subject always to the common privilege of reporting to the authorities.[1]  But if the causal connection to a seizure were enough, every party who reported a crime that prompted an arrest would be a state actor.  The limited case law on "intertwining" requires a relationship far closer than merely furnishing the information--accurate or not--on which the police base their own judgment and action.

Possibly Andresen believes that Dr. Diorio himself authorized the involuntary, emergency admission of Andresen to the hospital, a role permitted to private physicians under Massachusetts law.  Mass. Gen. Laws. ch. 123, § 12 (2000).  This is not clearly alleged in the complaint, but even if it were the outcome would be the same.  This court has already held that a doctor in such a

---

[1]The privilege under state law covers reports that are made to the police without actual malice or recklessness.  Hutchinson v. New England Tel. & Tel. Co., 214 N.E.2d 57, 59 (Mass. 1966).

situation is not thereby a state actor. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 257-60 (1st Cir. 1994); accord Harvey v. Harvey, 949 F.2d 1127, 1130-32 (11th Cir. 1992); Spencer v. Lee, 864 F.2d 1376-77 (7th Cir. 1989), cert. denied, 494 U.S. 1016 (1990).

Having rejected on the papers the federal claim that initially created federal jurisdiction over the case, the district court might well have refused to proceed with the state claims, allowing Andresen to pursue them in state court. 28 U.S.C. § 1367(c)(3)(2000). Nonetheless, the district court did have authority and discretion to address the pendent state claims, even after dismissal of the federal claim, 28 U.S.C. § 1367(a)(2000); Roche, 81 F.3d at 256-57, although it turns out that some of the state-law issues are difficult and one of the claims cannot be resolved on the pleadings at least at this stage.

The first state-law claim in the complaint--asserted against Shaw's but not Dr. Diorio--is under the Massachusetts Civil Rights Act, Mass. Gen. Laws. ch. 12, § 11I (2000). This statute creates inter alia a civil claim against anyone "whether or not acting under color of law" who interferes

> by threats, intimidation or coercion . . . with the exercise or enjoyment by any other person . . . of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth.

Mass. Gen. Laws. ch. 12, § 11H (2000). Apparently the "right" Andresen is asserting is freedom from unlawful search and seizure.

-8-

The district court held that the complaint does not allege that Shaw's coerced or threatened anyone. Of course, the police arguably coerced Andresen incident to the arrest--the "coercion" phrase is read broadly under state precedents, Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1131 (Mass. 1985); and arguably Shaw's was a but-for cause of the arrest even if the police exercised their discretion, Sarvis v. Boston Safe Deposit & Trust Co., 711 N.E.2d 911, 918-919 (Mass. App. Ct. 1999). But it is far from clear whether the statute extends to official coercion incident to a lawful seizure which this appears to have been, given the information available to the police.

Still, we will assume without deciding that one whose report to the police instigated a lawful arrest might on some facts be liable for the resulting deprivation of freedom if the instigation was itself wrongful. Whether the state civil rights statute extends this far may be debated, see Longval v. Comm'r of Corr., 535 N.E.2d 588, 593 (Mass. 1989), but it certainly does not extend further to a case of reasonable reporting. Absent serious fault, state law privileges a bystander to supply information to the police, see note 1, above, and the civil rights statute must be read conformably.

Nothing in Andresen's complaint alleges that Shaw's was at fault in providing information to the police. The complaint suggests that the co-worker with whom Andresen spoke "about guns,

revenge, life and politics" had "distorted" the conversation but the complaint does not say that Shaw's did anything more than repeat to the police what it was told by the co-worker and by Dr. Diorio. Given the privilege for reporting to authorities, this is not by itself wrongful conduct in violation of the civil rights statute even if the information turns out to be mistaken.

The next state-law count in the complaint charged Shaw's and Dr. Diorio with violating Andresen's right of privacy "especially as it relates to medical-related information." This we understand to be a claim that Dr. Diorio released private medical information about Andresen in violation of a state-law duty to keep such information confidential. Statutory and common-law privacy claims exist under Massachusetts law, and some case law pertains directly to an employer's right to release medical information that it obtained in the course of the subject's employment.[2]

The Massachusetts case law appears more liberal than one might expect in allowing disclosure where this is reasonably in the employer's interest; the cases say that a balancing test is to be employed, Webster v. Motorola, Inc., 637 N.E.2d 203, 207 (Mass. 1994); Bratt v. Int'l Bus. Machs. Corp., 467 N.E.2d 126, 136-37

_____

[2]Mass. Gen. Laws ch. 214, §1B (2000); Byrne v. Mass. Bay Transp. Auth., 196 F. Supp. 2d 77, 84-85 (D. Mass. 2002); Webster v. Motorola, Inc., 637 N.E.2d 203, 207 (Mass. 1994); Mulgrew v. City of Taunton, 574 N.E.2d 389, 393 (Mass. 1991); Alberts v. Devine, 479 N.E.2d 113, 119 n.4 (Mass. 1985); Bratt v. Int'l Bus. Machines Corp., 467 N.E.2d 126, 136 & nn.21-22, 137 (Mass. 1984).

(Mass. 1984), and the district court ruled that the balance in this case justified disclosure.  But key precedents on balancing (e.g., Byrne v. Mass. Bay Transp. Auth., 196 F. Supp. 2d 77, 84-85 (D. Mass. 2002); Bratt, 467 N.E.2d at 137) involve company doctors or ones examining the employee at the company's behest.  Here, it is unclear whether Dr. Diorio was employed by or owed his primary duty to Shaw's.

If Dr. Diorio owed Andresen the ordinary duty of doctor-patient confidentiality, then it appears to us that Dr. Diorio's actions were likely governed by the rule that "all physicians owe their patients a duty . . . not to disclose without the patient's consent medical information about the patient, except to meet a serious danger to the patient or to others."  Alberts v. Devine, 479 N.E.2d 113, 119 n.4 (Mass. 1985).  We are concerned now only with Dr. Diorio's liability because Andresen has not appealed from the dismissal of the privacy claim against Shaw's.

Even assuming he lacked any special relationship with Shaw's, Dr. Diorio may well have been entitled under this "serious danger" test to reveal information about his patient.  Andresen concedes that he was depressed--in context the implication is clinical depression--and he concedes talking with his co-worker "about guns, revenge, life and politics."  If the police thought the information worth acting upon, this is probably a fortiori support

for Dr. Diorio's on-the-spot judgment to reveal the information, even if ultimately the hospital examination proved negative.

But at this stage we have no information about Shaw's relationship with Dr. Diorio; what Shaw's told Dr. Diorio; what Dr. Diorio's records showed about Andresen's condition; what led Dr. Diorio to conclude that information should be released to Shaw's or to the police; or what information he actually released. We are hard put to see how the serious-danger requirement can be tested without some or all of this information, so this claim must be remanded.

Four more related state claims against Shaw's were properly dismissed. Two were for infliction of emotional distress--reckless or negligent under one count and deliberate under another--one was for negligent harm by a landowner to one on the landowner's property, and the last was a loss of consortium claim based on the same wrongs. The first and third of these seem hopeless on the merits but, in any event, all four were dismissed as to Shaw's on the single ground that they were precluded by the Massachusetts Worker's Compensation Act, Mass. Gen. Laws ch. 152, § 24 (2000).[3]

The Worker's Compensation Act applies when a worker "receives a personal injury arising out of and in the course of his

---

[3]The emotional distress claims were also directed against Dr. Diorio but in his brief on appeal Andresen does not address their dismissal as to Dr. Diorio and so they are abandoned as to him. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 43 (1st Cir. 1998)

employment." Mass. Gen. Laws ch. 152, § 26 (2000). Under it, "[a]n employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter." Id. Massachusetts courts construe this provision broadly, and the waiver covers intentional and negligent infliction of emotional distress, Hinchey v. NYNEX Corp., 144 F.3d 134, 146 n.7 (1st Cir. 1998), simple negligence, Doe v. Purity Supreme, Inc., 664 N.E.2d 815, 818 (Mass. 1996), and loss of consortium, Sarocco v. Gen. Elec. Co., 879 F. Supp. 156, 164 (D. Mass. 1995).

Andresen argues that the injuries occurred after his termination and thus are not covered by the worker's compensation regime. However, under Massachusetts case law, the statute covers broadly any injury that arises out of the employment relationship regardless of whether it occurs during the precise period of employment. See Grant v. John Hancock Mut., Life Ins. Co., 183 F. Supp. 2d 344, 366 (D. Mass. 2002); Chan v. Immunetics, Inc., No. CIV.A. 98-0388D, 1999 WL 218490, at *4 (Mass. Super. Apr. 7, 1999).

Here, the main harm Andresen attributed to Shaw's was its role in his seizure and hospitalization. The acts that led to this event--the provision of information by Shaw's to the police--arose from remarks Andresen made while on the job, reported by a co-worker, and relayed to the police while Andresen was still an employee. The seizure not only grew out of the employment but was

-13-

closely tied to it in time and place. We agree with the district court that waiver barred the four counts in question so far as they rested upon the seizure and hospitalization.

Andresen also blames Shaw's for derogatory falsehoods independent of its report to the police, but these events cannot support the four counts in question. The original complaint identified only one such set of alleged falsehoods--Shaw's communications incident to Andresen's claim for unemployment insurance benefits. The district court held such reports absolutely privileged under the state statute, Mass. Gen. Laws ch. 151A, §46(a) (2000), and Andresen has not appealed on this issue.

Andresen later amended the complaint to add four more incidents of alleged defamation. These involved several incidents of intra-plant gossip about Andresen (why Shaw's would be liable is unclear) and one alleged negative report "by Shaw's" to a prospective employer of Andresen after his discharge. However, the amendment was not allowed as to the four counts in question (nor has Andresen appealed this denial) but only as to the remaining count-- for defamation--to which we now turn.

Unlike ordinary negligence or infliction of emotional distress, the waiver provision in the Massachusetts workmen's compensation statute does not operate to bar defamation claims even if they are related to employment. Foley v. Polaroid Corp., 413 N.E.2d 711, 715 (Mass. 1980). The district court dismissed the

amended defamation claim on the ground that the allegations as to the incidents did not meet the heightened pleading standard imposed by Massachusetts law; these require that the complaint include "the precise wording of at least one sentence of the alleged defamatory statement[s] [and] the means and approximate dates of publication." Dorn v. Astra USA, 975 F. Supp. 388, 396 (D. Mass. 1997); see also Eyal v. Helen Broad. Corp., 583 N.E.2d 228, 231 n.7 (Mass. 1991) (defamation a "disfavored" claim).

On appeal, Andresen does not argue that he met the Massachusetts heightened pleading standard for defamation; instead, he says that he was never subject to the state's pleading standard, citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). That case could be distinguished--the claim in Leatherman was a federal claim in federal court. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513 (2002). But Leatherman lends general support to Andresen's position by emphasizing the general primacy in federal court of Rules 8 (notice pleading) and 9 (heightened pleading only for fraud and mistake), Fed. R. Civ. P. 8(a)(2), 9(b); Leatherman, 507 U.S. at 169.

In any event, under standard Erie doctrine, state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law. Hanna v. Plumer, 380 U.S. 460, 466-74

-15-

(1965); see also Garcia v. Hilton Hotels Int'l, Inc. 97 F. Supp.
5, 7-9 (D.P.R. 1951); 5 Wright & Miller, Federal Practice and
Procedure, § 1245 (2d ed. 1990). Other circuits have reached the
same conclusion. Muzikowski v. Paramount Pictures Corp., 322 F.3d
918, 926 (7th Cir. 2003); Croixland Props. Ltd. P'ship v. Corcoran,
174 F.3d 213, 215 n.2 (D.C. Cir. 1999), cert. denied, 528 U.S. 1021
(1999). But see 5 Wright & Miller, supra § 1245 (citing some
contrary authority).

Nevertheless, the defamation count fails because, as
already noted, no facts suggesting negligence or deliberate
falsehood by Shaw's are alleged. At common law defamation was a
rare, no-fault tort but the Supreme Court now rigidly confines
state-law defamation claims within a First Amendment framework and
may have established negligence as a minimum fault requirement even
in defamation claims by private figures brought against non-media
defendants.[4]

We need not decide the federal issue for ourselves because
Massachusetts, apparently assuming that such a constitutional

---

[4]The Supreme Court imposed this negligence requirement as to
media defendants in Gertz v. Robert Welch, Inc., 418 U.S. 323, 347
(U.S. 1974). Whether the same rule applies to non-media defendants
as to statements against non-public figures in matters of private
concern is still formally unsettled, see, e.g., 2 Tribe, American
Constitutional Law § 12-3 (2d ed. 1988), although some have read
Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749
(1985), as rejecting the distinction between media and non-media
defendants. E.g., Sullivan & Gunther, Constitutional Law 1038
(14th ed. 2001).

requirement exists, has already reshaped its own defamation law to require negligence even as in a case such as this one. <u>Ravnikar</u> v. <u>Bogojavlensky</u>, 782 N.E.2d 508, 510-11 (Mass. 2003). Here, as already noted, Andresen has not alleged negligence or worse on Shaw's part in its report to the police. Nor do the facts he alleged in the complaint support an inference of fault.

On appeal, Andresen also complains that his defamation claim against Dr. Diorio was wrongly dismissed. He has no such claim. Dr. Diorio was not <u>named</u> as a defendant in the defamation count in the original complaint; and although Andresen sought leave to add him to this count when Andresen amended the complaint to allege further incidents of defamation, the district court declined to allow Dr. Diorio to be added, and Andresen did not appeal from this disallowance.

Accordingly, the judgment of the district court is <u>affirmed</u> except as to the privacy claim in count III against Dr. Diorio. As to this claim, the judgment of dismissal is <u>vacated</u> and the claim is <u>remanded</u> for further proceedings, which the district court may conclude should be conducted in state court.

<u>It is so ordered</u>.